[No. 11240.   Department One.   January 23, 1914.]

## J. B. SLEDGE *et al.*, *Appellants*, v. ARCADIA ORCHARDS COMPANY, *Respondent*.[1]

DAMAGES—CONTRACT—BREACH—STIPULATED DAMAGES OR PENALTY. An agreement for stipulated damages for breach of a contract cannot be sustained, except as a penalty authorizing recovery only of pecuniary damages actually sustained, where it provided that $60 per acre was to be paid plaintiff for each acre of a hundred acre tract which the plaintiff failed, (1) to plant to apple trees in the spring of 1912 as early as the weather would permit, (2) to plant to a cover crop between the rows, and (3) to care for the trees after planting; since the same sum was to fall due for a minor or partial default as for a total default, and also on default in any one of the three particulars, all of which were of different degrees of importance, and could not be the proper subject for stipulated damages in the same amount, making the damages stipulated for unreasonable in relation to the gravity of the default for which they were to compensate.

CONTRACTS—PERFORMANCE OR BREACH—DEFAULT—WAIVER. A provision for stipulated damages in case of a default in a contract to plant a tract of land to apple trees as early in the spring of 1912 as the weather will permit, and to plant a cover crop between the rows at the same time, is waived, where the plaintiff, after commencing suit on the default May 13, at which time planting had not commenced, wrote a letter to defendant on May 20th, knowing that work was in progress (planting being finished June 8), that it would be satisfactory if the cover crop were planted by September 1st; since an offer and acceptance of part performance prevents recovery of liquidated damages.

CONTRACTS—BREACH—ACTIONS — DAMAGES — PENALTY — OFFER OF PROOF—SUFFICIENCY. In an action to recover on a penalty for a breach of contract to plant one hundred acres of land to apple trees in the spring of 1912 as early as the weather will permit, in which it appeared that the land was covered with stumps and brush when

[1]Reported in 137 Pac. 1051.

the contract was made Nov. 11, 1911, and little of the work of clearing and plowing could be done in the winter, and that the planting was completed June 8th, an offer to prove by an expert that the planting season was usually from April 1st to the middle or last of May, and that trees planted later would be retarded in bearing for one year, is insufficient as an offer to prove pecuniary damages; since it did not tend to show a breach of the contract, which was substantially performed, and was not followed by offer of proof of the amount of the pecuniary damages sustained.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered December 16, 1912, dismissing an action on contract, tried to the court, upon granting a nonsuit. Affirmed.

*John T. Mulligan, Neil C. Bardsley,* and *H. N. Martin,* for appellants.

*Cullen, Lee & Hindman,* for respondent.

ELLIS, J.—In this action, the plaintiff sought to recover from the defendant the sum of $6,000, as liquidated damages for alleged breach of a written contract. In the contract, which is attached to the complaint as an exhibit, the defendant is designated as party of the first part, and the plaintiff as party of the second part. It was dated November 1, 1911, and, omitting formal parts and signatures, reads as follows:

"(1)   The party of the first part, for and as part consideration for the dismissal by plaintiff of cause No. 78632, in the superior court of the state of Washington for King county, J. B. Sledge, plaintiff, vs. Arcadia Orchards Company, a corporation, defendant, and an extension of time to the first party in which to plant said second party's land to apple trees, hereby covenants  and agrees to plant to apple trees two years old in the fall of 1911 the entire 100 acres of land described and mentioned in a certain contract between the parties to this agreement, dated December 20, 1909, requiring the first party to plant said land to apple trees and to plant all of said land to a cover crop between the rows of said trees which shall be in the judgment of A. G. Craig, horticulturist for the first party, of the greatest advantage to said land, as early as the weather will per-

mit in the spring of 1912, and to properly care for said apple trees according to the terms of said contract, which is hereby expressly continued in full force and effect and to which this agreement is supplemental; and if the first party shall fail to plant all or any portion of said land to apple trees two years old in the fall of 1911 or properly care for said trees or plant said cover crop as soon as said trees have been planted, or fail to perform any and all of the covenants and agreements entered into by the first party, the first party shall and it hereby expressly covenants and agrees to pay said second party $60 for each acre of said land remaining unplanted after the time herein specified for planting said land in the spring of 1912, and said sum shall become due and payable and the first party hereby agrees to pay the same to said second party upon default by the first party; and the first party hereby further agrees to pay said second party $60 for each acre of said land remaining unplanted at the close of each planting season after the time herein specified for said land to be planted in the spring of 1912, which sum or sums shall become due and payable to said second party immediately upon said default by the first party, as liquidated damages, and if the first party shall fail to properly care for said trees after the same are planted it hereby expressly agrees to pay said second party $60 for each acre of said land on which said trees are not properly cared for, and the first party hereby expressly covenants and agrees with said second party the payment of said liquidated damages for and on account of the breach of this agreement on its part as herein specified according to the number of acres of said land remaining unplanted after and including the spring of 1912, represents and is a just amount to be allowed said second party for damages said second party will suffer on account of any' default on the part of the first party to fully and promptly perform any and all of the covenants and agreements herein specified by it to be performed on the dates herein specified.

"(2)   The party of the second part, for and in consideration of the covenants and agreements herein made and entered into by the first party hereinbefore mentioned and the prompt performance of said covenants and agreements by said first party, hereby covenants and agrees to and does give said first party an extension of time from the fall of

1911, which is the latest date said first party has to plant said land belonging to the second party under the terms of said contract dated December 20, 1909, which contract and all rights thereunder is expressly reserved by the second party, in which to plant said 100 acres of land purchased by the second party from said first party to apple trees two years old in the fall of 1911, to as early as the weather will permit said first party to plant said land in the spring of 1912, upon the express condition said first party will pay the second party all sums due as liquidated damages for default on the part of said first party to perform any of the covenants and agreements herein specified to be performed by said first party promptly as soon as said first party shall be in default in the performance of any of said covenants and agreements, and the second party grants to said first party the right to harvest the cover crop to be planted between the rows of trees on said land if said first party shall so desire and proceed to harvest said crop."

The complaint was verified on May 13, 1912, and alleged that at that time no trees had been planted; that the season for planting, according to the terms of the contract, has passed, and that, by virtue of the terms of the contract, this constituted a breach, entitling the plaintiff to $6,000 damages as therein provided. The answer denied generally the allegations of the complaint, but on the trial the defendant admitted the execution of the contract. The cause was tried to the court without a jury. The evidence adduced by the plaintiff tended to establish the following facts: When the contract was made, the land in question, though it had been logged off in prior years, was densely covered with small trees, underbrush and large stumps. Both parties knew that the land had to be cleared of trees and underbrush, the stumps blown out and the brush and stumps piled and burned before the land could be plowed and prepared for planting to trees. It fairly appears that the land could not be cleared to any advantage during the winter season, though the plaintiff did testify that, in his opinion, some of the clearing might

have been done after November 1, 1911, when the contract was made. It appears that the clearing was commenced sometime early in the spring of 1912, and prosecuted as rapidly as possible, the plaintiff Sledge testifying that he visited the land on May 5, 1912, when he found men working all over the place; that the underbrush had all been cleared off and burned; that twenty acres had been fully cleared and the stumps piled; that, on another twenty, the piling of the stumps was going on, while on another twenty, stumps were being blown out preparatory to piling and burning. Plowing was commenced on other land belonging to the defendant on March 27, and progressed as steadily as the weather would permit, the plaintiffs' land being reached on May 13, between which time and June 8, it was all plowed and set out to apple trees. There was evidence to the effect that, had the plaintiffs' land been cleared before the spring of 1912, the weather conditions were such that plowing could have been commenced thereon about April 18. Sledge testified that he visited the land again on May 12, the day before the plowing began, and on the next day, began this action. The evidence makes it clear that he knew that the work was in progress when the action was commenced, and that the defendant was intending to prosecute the work and plant the trees, since, after suit was commenced, he wrote the defendant, under date of May 20, 1912, a letter as follows:

"Arcadia Orchards Co., Spokane, Wash.
    "Gentlemen :—
    "As specified in supplemental contract for planting one hundred acres of my land by you, cover crop therefor is to be planted at time of tree planting, being this spring.
    "Beg to state, it will be agreeable to me, provided you delay this planting of cover crop, getting same planted by September 1st, 1912, at which time it is desired a planting of vetch and rye, mixed, be used. Such being recommended by your horticulturist, Mr. A. G. Craig, as of most advan-

tage to the soil and which is in accordance with mentioned
contract.

"Yours truly,                        J. B. Sledge."

No offer was made to prove any actual pecuniary damage
by reason of the delay in planting the apple trees, nor was
any offer made to show that the trees, when planted, were
not properly cared for, or that any of the trees on the
whole 100 acres failed to grow.  At the close of the plain-
tiff's evidence, the court, on defendant's motion, granted a
nonsuit, holding that the provision in the contract for pay-
ment of $60 an acre was not a legal provision for liquidated
damages, but a penalty, first, because the same sum was to
be paid on default in any one or all of three things under-
taken by the defendant, namely, the planting of the trees,
the caring for the trees, and the planting of the cover crop;
second, because the time for the final performance of the
contract was uncertain and that, had the parties intended
the payment stipulated as liquidated damages, they would
have fixed a definite time beyond which the planting could
not be delayed; and third, because there was a substantial
compliance with the contract in that all of the land was
planted to trees, as shown by the evidence, by June 8, 1912.
The plaintiffs appeal.

Three questions are presented for our determination: (1)
Should the contract be construed as providing for liquidated
damages or for a penalty?  (2) Did the appellants, by the
letter of May 20, waive default and accept what had al-
ready been done as part performance?  (3) Did the court
err in refusing to permit such proof of damages as was
offered?

I.    It will be noted that, by the contract, the respondent
undertook to do three principal things: first, to plant the
entire 100 acres to apple trees "as early as the weather will
permit in the spring of 1912"; second, to plant the land to
such cover crop between the rows as shall be, in the judg-
ment of the respondent's horticulturist, to the best advan-

tage to the land; third, to properly care for the trees when planted. By a literal construction of the contract, the $60 an acre was to be paid by respondent upon failure to perform any one, any two, or all of these things. It is manifest that these things were, in their very nature, different in degree of importance. The total failure to plant the trees would be of much greater damage to the appellants than the failure to plant the cover crop or the failure to properly care for the trees when planted, and the latter would doubtless be a greater damage than the failure to plant the cover crop. Yet, if the contract be construed literally, as one for liquidated damages, the respondent would be liable for payment in the same amount on its default in the least important of these undertakings as for a default in the most important. While it may be reasonably argued that each of these things, by reason of the difficulty in estimating the damages likely to result from a default in either of them, would be a proper subject for liquidated damages, it is still evident that they are not, from their very nature, the proper subject for stipulated damages in the same amount. Though stipulated damages are allowable whenever actual damages are incapable of accurate measurement and proof, the damages stipulated cannot be sustained when, on the face of the contract, they have no reasonable relation to the gravity of the default for which they are intended to compensate. Reasonable compensation is of the very essence of the distinction between stipulated damages and a penalty. It is self-evident that, if $60 an acre would be reasonable compensation for the failure to plant the trees—that is, a total failure to perform the contract—it would be an unreasonable amount as compensation for a failure in either of the other two things undertaken, or for a mere partial failure to perform the contract. It is equally clear that, if the $60 an acre would be only a reasonable compensation for a failure to properly care for the trees, or to plant the cover crop, then it would be unreasonably small and inadequate as a com-

pensation for a total failure to plant the trees, that is, a total breach of the contract. If the parties had actually intended to fix stipulated damages to be paid for default, it is obvious that they would have stipulated different sums for default in these different undertakings. To permit a recovery of the same sums for a minor as well as a major default, or for a partial as well as for a total failure to perform the contract, would be unconscionable. The very fact that the parties fixed the same sum without regard to the gravity of the default, and whether the default might be partial or go to the whole contract, made the provision for payment a penalty and not an enforceable stipulation for liquidated damages.

"Where an agreement contains provisions for the performance or non-performance of several acts of different degrees of importance, and then a certain sum is stipulated to be paid upon a violation of any or of all such provisions, and the sum will be in some instances too large and in others too small a compensation for the injury thereby occasioned, that sum is to be treated as a penalty, and not as liquidated damages." 1 Pomeroy, Equity Jurisprudence (3d ed.), § 443.

"Whether an agreement provides for the performance or non-performance of one single act, or of several distinct and separate acts, if the stipulation to pay a certain sum of money upon a default is so framed, is of such a nature and effect that it necessarily renders the defaulting party liable in the same amount at all events, both when his failure to perform is complete and when it is only partial, the sum must be regarded as a penalty, and not as liquidated damages." 1 Pomeroy, Equity Jurisprudence (3d ed.), § 444.

"Contracts often contain a variety of stipulations of unequal importance and therefore, admitting of many breaches for which the damages would be different in amount. In such a case a total breach would involve an injury greater than that which would result from the infraction of a particular stipulation. Hence it is self-evident that a sum stipulated to be paid, either for breach of one of the minor provisions or of the whole contract, could not be a liquidation of damages on the principle of compensation for actual in-

jury. The sum would either be too great for a partial breach or wholly inadequate to one which involved the loss of the whole contract." 1 Sutherland, Damages (3d ed.), § 294.

See, also, *Krutz v. Robbins*, 12 Wash. 7, 40 Pac. 415, 50 Am. St. 871, 28 L. R. A. 676; *East Moline Co. v. Weir Plow Co.*, 95 Fed. 250, 255; *Monmouth Park Ass'n v. Warren*, 55 N. J. Law 598, 27 Atl. 932; *Nash v. Hermosilla*, 9 Cal. 584, 70 Am. Dec. 676; *Carter v. Strom*, 41 Minn. 522, 43 N. W. 394; *City of Madison v. American Sanitary Eng. Co.*, 118 Wis. 480, 95 N. W. 1097; *Iroquois Furnace Co. v. Wilkin Mfg. Co.*, 181 Ill. 582, 54 N. E. 987. In *Eilers Music House v. Oriental Co.*, 69 Wash. 618, 125 Pac. 1023, we distinctly recognize these principles, though finding that they were not applicable to the facts there presented.

II. But, even assuming that, notwithstanding the provision for payment in the same amount for any default, regardless of its gravity, the contract might be construed as one for liquidated damages because the uncertainty of the amount of damages in case of either default, still, the appellant's letter of May 20, 1912, presents, in our opinion, an insuperable obstacle to the recovery of the sum in question as liquidated damages. It is clear from the evidence that, at the time this letter was written, the appellants knew that the respondent had cleared the land, and was proceeding with the planting of the trees. The letter which we have set out in our statement of the facts is a clear recognition of this fact, and carries a conclusive inference that, if the work were even then prosecuted to completion, it would be accepted as a part performance, and the remaining undertaking to plant the cover crop might be delayed until September 1, and would then be accepted as a final performance. Clearly, the respondent was justified, notwithstanding the fact that suit had already been commenced, in assuming that the default therein claimed would be waived and that if it then proceeded with the planting of the trees, such ac-

tion would be accepted as a performance *pro tanto* of the contract. To now permit the appellants to say that they meant nothing by this letter, and that the respondent was not justified in proceeding with the performance of the contract on the faith of that letter, would be most inequitable. Mr. Sutherland, after discussing the rule that the same sum cannot be fixed as liquidated damages for different breaches of a contract of different degrees of importance, says:

"For the same reason that one sum cannot consistently be compensation alike for a total and partial breach, a stated sum made payable for the former cannot by construction be applied to any infraction after acceptance of part performance. In case of such a stipulation the stated sum is only recoverable upon the happening of the very event mentioned in the contract. If a partial breach occurs it has sometimes been said the stated sum is as to that breach only penalty, and damages are given on proof, without regard to it." 1 Sutherland, Damages (3d ed.), § 296.

The principle here applied has been admirably stated by the supreme judicial court of Massachusetts as follows:

"The question, what is liquidated damages, and what is a penalty, is often a difficult one. It is not always the calling of a sum, to be paid for breach of contract, liquidated damages, which makes it so. In general, it is the tendency and preference of the law, to regard a sum, stated to be payable if a contract is not fulfilled, as a penalty and not as liquidated damages; because then it may be apportioned to the loss actually sustained. But, without going at large into the subject, one consideration, we think, is decisive, against recovering the sum in question as liquidated damages, namely, that here there has been a part performance, and an acceptance of such part performance. If the parties intended the sum named to be liquidated damages for the breach of the contract therein expressed, it was for an entire breach. Whether divisible in its nature or not, it was in fact divided by an offer and acceptance of part performance. It is like the case of an obligation to perform two or more independent acts, with a provision for single liquidated damages for non-performance; if one is performed, and not

the other, it is not a case for the recovery of the liquidated damages." *Shute v. Taylor*, 5 Met. (Mass.) 61, 67.

This rule was recognized and applied, and the above language quoted by this court in *Myers v. Ralston*, 57 Wash. 47, 106 Pac. 474.

III.  Since the appellants cannot recover the sum claimed as liquidated damages, it remains only to inquire whether there was any such proof, or offer of proof, of actual damage as to put the respondent to its defense.  The only offer of evidence on the appellants' part was an offer to prove by an expert horticulturist that the open season for planting trees in the vicinity of appellants' land begins from the first to the tenth of April and ends about the middle or the last of May, and that trees planted later than that would probably be delayed in producing to the extent of one year. The appellant contends that the refusal to admit this evidence constitutes reversible error.  It seems to us, however, that this evidence was properly refused, for two reasons.  In the first place, the contract fixed no definite time within which the trees should be planted.  The parties to the contract knew that the land had to be cleared, the stumps blown out, the brush and stumps burned, the land plowed and fully prepared before any trees could be planted.  In the very nature of the case, little, if any, of this work could be performed in the winter time, and there is nothing arising to the dignity of evidence to indicate that weather conditions at any time after the making of the contract, November 1, 1911, until the opening of the spring of 1912, were such that the land could have been cleared, much less plowed, earlier than it was.  Construing the contract, therefore, in reference to the known condition of the subject-matter, and remembering that no definite time was fixed in the contract when the planting of the trees should be completed, it seems to us that evidence as to the most advantageous time for planting was immaterial.  The respondent had merely undertaken to plant the trees as early as the weather would per-

mit in the spring of 1912. The evidence falls far short of showing that this undertaking was not substantially performed. In the second place, there was no offer to follow the offer made with proof of the actual pecuniary damage which would result from the supposed delay in production to the extent of one year.

We are constrained to hold that the provision for the payment of $60 an acre as provided in the contract must be construed as a penalty, rather than as liquidated damages; that the appellants, having accepted partial performance of the contract with full knowledge of the conditions, cannot be heard to say that there was a total failure of performance; and that, having failed to prove, or offer to prove, pecuniary damages in any definite amount, they have failed in their proof.

The judgment is affirmed.

CROW, C. J., CHADWICK, MAIN, and GOSE, JJ., concur.