[No. 10428–4–I. Division One. January 25, 1984.]

ELIZABETH MCEACHERN, *Respondent,* v. SHERWOOD & ROBERTS, INC., ET AL, *Defendants,* THELMA LOUISE AGNEW, ET AL, *Appellants.*

*Richard A. Agnew,* for appellants.

*Peterson, Bracelin, Young & Putra, Inc., P.S., Kelby D. Fletcher,* and *Christopher E. Young,* for respondent.

WILLIAMS, J.—Elizabeth Wells[1] brought this action against Thelma Louise Agnew, William Watkins, Sherwood & Roberts, Inc., and Century 21–Ballinger Realty, Inc., seeking to enforce the liquidated damages provision of a real estate earnest money agreement. After a trial to the court, sitting without a jury, judgment was entered in favor

---

[1]Wells has changed her name to Elizabeth McEachern.

of Wells against Agnew and Watkins.[2] Agnew and Watkins appeal, claiming that the trial court erred either by (1) finding that there was an enforceable contract or (2) finding that it was Agnew and Watkins, not Wells, who breached the contract. Wells cross–appeals, claiming that the trial court erred by refusing to award her reasonable attorney's fees. We affirm the judgment insofar as it finds Agnew and Watkins liable to Wells but reverse on the question of attorney's fees.

The facts are these: In early 1979, Wells listed her 140–acre farm for sale with Sherwood & Roberts, Inc., a real estate broker and a member of the North End Brokers Association of which Century 21–Ballinger Realty, Inc., was also a member. Agnew and Watkins contacted Terry McNatt, a Century 21 real estate agent, seeking to purchase a farm. McNatt told them that Wells' farm was available but Agnew expressed concern about a notation on the NEBA card which read: "50 AC [acres] of pasture presently leased for hay . . ." After McNatt was assured by Wells that the lease presented "no problem," Agnew and Watkins tendered an earnest money agreement, offering to buy the farm for $625,000 with a closing date of September 6, 1979 (approximately 6 months later).

Wells did not accept the offer but, rather, counteroffered on essentially the same terms with the addition of this pre-closing rental arrangement:

> Seller agrees to sign a rental agreement with purchaser prior to closing. Terms of rental agreement to be as follows: Possession date of June 15, 1979. A rental rate of $2,500 per month and the entire amount of rental monies to apply, at closing, against the purchase price. First month rent due prior to possession.

Agnew and Watkins accepted the counteroffer and deposited with McNatt a $50,000 promissory note as earnest money.

Pursuant to the earnest money agreement, McNatt pre-

---

[2]The claims against Sherwood & Roberts, Inc. and Century 21–Ballinger Realty, Inc. were dismissed.

pared an "Occupancy Prior to Close of Sale of Real Estate Agreement." This agreement specified that: "The cutting of the hay shall be the responsibility of the purchaser. In return, the hay will be given to the purchaser at no charge." Agnew and Watkins signed the proposed rental agreement.

McNatt then took the signed agreement to Wells, who initially balked at signing it because it gave the hay to Agnew and Watkins. After McNatt crossed out the word "purchaser" and substituted the word "seller," Wells signed the agreement. McNatt did not inform Agnew or Watkins of this change.

Wells forwarded the rental agreement to her attorneys who in turn sent a copy of it with a letter to Agnew and Watkins concerning an extension of the closing date. Agnew and Watkins noticed that the agreement had been altered and refused to proceed with the transaction, purportedly because of the change.

The first question is whether there was a sufficient "meeting of the minds" to enter into an enforceable contract to sell the farm. Agnew and Watkins contend that there was not because the parties never agreed as to who would control the 50–acre hayfield during the rental period called for in the earnest money agreement. We disagree.

In order for there to be a contract, there must be a "meeting of the minds" on the essential terms of the agreement. *Peoples Mortgage Co. v. Vista View Builders,* 6 Wn. App. 744, 496 P.2d 354 (1972). Even where an agreement might be too indefinite on its terms to be specifically enforced, it may be certain enough to constitute a valid contract, the breach of which may give rise to damages. *Hedges v. Hurd,* 47 Wn.2d 683, 289 P.2d 706 (1955).

The minds of Agnew, Watkins, and Wells all met on the essential terms of their contract. Wells agreed to convey her entire interest in the 140–acre farm, by a date certain, in return for $625,000 from Agnew and Watkins. Given the scope of the transaction, the question of the control of the hay during the rental period was not an essential term of this contract. The trial court's award of damages was

appropriate. *Hedges v. Hurd, supra.*

The next question is whether Wells breached the contract by refusing to sign the rental agreement as tendered by Agnew and Watkins, thus excusing their nonperformance. Agnew and Watkins contend that Wells was under an obligation to enter into a rental agreement which gave them control over the entire farm—including the hay—prior to closing and that her refusal to do so constituted a material breach of the contract of sale. Again, we disagree.

■ Wells' refusal to sign the rental agreement as proposed by Agnew and Watkins, if a breach at all, did not relate to an essential element of the contract and, therefore, was not a material breach. The lease arrangement applying all of the rentals to the purchase price was proposed by Wells so that someone would be living on the farm to take care of it until September 6, the closing date proposed by Agnew and Watkins and agreed upon in the earnest money agreement. Moreover, the trial court found that Agnew and Watkins never informed Wells that they believed her action to be a material breach of the contract.[3] Finding of fact 12.[4] By reneging on the deal without affording Wells an opportunity to address their concern, Agnew and Watkins breached their duty to operate in good faith. *Miller v. Othello Packers, Inc.,* 67 Wn.2d 842, 844, 410 P.2d 33 (1966); *Long v. T–H Trucking Co.,* 4 Wn. App. 922, 486 P.2d 300 (1971). There is no error.

The next question is whether Agnew and Watkins were entitled by the language of the earnest money agreement to

---

[3]Agnew and Watkins claim that they told McNatt of their concern over control of the hayfield and that this knowledge should be imputed to Wells. While McNatt may have been Wells' agent, *Frisell v. Newman,* 71 Wn.2d 520, 429 P.2d 864 (1967), he was not her sole agent and his interests were undeniably adverse to hers. Thus, his knowledge is not imputed to her. *Puget Sound Nat'l Bank v. St. Paul Fire & Marine Ins. Co.,* 32 Wn. App. 32, 645 P.2d 1122, *review denied,* 97 Wn.2d 1036 (1982).

[4]This finding is supported by substantial evidence in the record and will not be disturbed. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

the return of the earnest money deposit even if Wells' refusal to sign the proposed rental agreement as tendered did not constitute a material breach. Agnew and Watkins contend that, pursuant to paragraph 3 of the agreement, any breach by Wells, even an immaterial one, entitled them to a return of their deposit. In pertinent part, paragraph 3 provides:

> If either party defaults (that is, fails to perform the acts required of him) in his contractual performance herein, the non–defaulting party may seek specific performance pursuant to the terms of this agreement, damages, or rescission. If the non–defaulting party seeking damages or rescission is the purchaser, the earnest money, upon demand, shall be refunded less all charges provided under Paragraph 5.

 Wells argues that some element of materiality must be read into the term "default" as used in paragraph 3. We agree. Any other construction would transform the paragraph from a stipulated damages clause to a penalty clause. It has long been the rule that, although stipulated damages are allowable,

> the damages stipulated cannot be sustained when, on the face of the contract, they have no reasonable relation to the gravity of the default for which they are intended to compensate. Reasonable compensation is of the very essence of the distinction between stipulated damages and a penalty.

*Sledge v. Arcadia Orchards Co.,* 77 Wash. 477, 483, 137 P. 1051 (1914). To force Wells to lose the benefit of her bargain with Agnew and Watkins merely because she *immaterially* defaulted in some regard would be to impose a penalty upon her. Paragraph 3 cannot be construed to bring about such an unconscionable result.

The final question, the subject of the cross appeal, is whether the trial court erred by refusing to award Wells attorney's fees as called for in the promissory note, given as earnest money, which provides:

> if this note shall be placed in the hands of an attorney for collection or if suit shall be brought to collect any of

the principal or interest of this note, I promise to pay a reasonable attorney's fee.

The promissory note was given as earnest money under the terms of the real estate purchase and sale agreement. As such, it formed a part of the agreement of the parties. To recover liquidated damages (the earnest money) for the breach of contract, Wells was required to place the agreement with the accompanying note in the hands of an attorney for collection. Thus, she is entitled to reasonable attorney's fees as provided for in the note. *Gilmore v. Gilmore,* 165 Wash. 492, 496, 6 P.2d 69 (1931). We remand to the trial court for a determination of the amount of fees due Wells.

Wells is also awarded attorney's fees on appeal. The amount due shall be set by the trial court on remand. RAP 18.1(e).

All other issues are without merit.

The judgment is affirmed; the cause is remanded to the trial court for further proceedings.

DURHAM, C.J., and ANDERSEN, J., concur.

Review denied by Supreme Court April 6, 1984.