[No. 15297-1-I.   Division One.   September 8, 1986.]

PUGET SOUND SERVICE CORPORATION, *Appellant,* v. ROBERT G. BUSH, ET AL, *Respondents.*

*William W. Baker* and *Anderson, Hunter, Dewell, Baker & Collins,* for appellant.

*Charles E. Watts* and *Van Valin & Watts,* for respondents.

RINGOLD, A.C.J.—The plaintiff, Puget Sound Service Corporation (Puget Sound), appeals the trial court's judgment dismissing its claim against defendants, Robert and Lee Bush, for breach of an agreement to purchase a condominium. We conclude that the trial court erred in placing the burden of proof on the plaintiff and reverse.

The Bushes were apartment dwellers who owned a 21–foot pleasure boat. They wanted to obtain housing with

moorage space for their boat so they would not have to launch it from their trailer every time they wished to use it. Puget Sound was the owner/developer of a condominium project located on Lake Union known as "Union Harbor", which offered private vessel moorage slips adjacent to the condominiums.

In February 1982, the Bushes executed a purchase and sale agreement for a Union Harbor Condominium through Puget Sound's exclusive realtor, MacPherson's Realty. Because of the parties' inability to come to agreement on the financing terms, however, the transaction was terminated. Nevertheless, the Bushes remained interested in the condominiums.

In May 1982, the Bushes were advised that improved financing terms were available for the condominiums. Through MacPherson's Realty, the Bushes executed another purchase and sale agreement for the purchase of unit 309 of the Union Harbor Condominiums along with marina slip 4. The closing and termination date was July 15, 1982.

Financing was an integral part of the Bushes' offer to purchase. They were both "along in years", on a limited income and not regularly employed. At the request of the Bushes, specific financing provisions were incorporated into the purchase and sale agreement. The purchase price of $145,000 would be tendered by payment of $35,000 at closing and

> the balance of $110,000 by obtaining from Pioneer 1st Fed. S & L on which the interest rate shall be 8⅞ [percent] during the first year, 9⅞ [percent] during the second year, 10⅞ [percent] during the third year. Loan to be refinanced at fourth year. The lender is to include a written guarantee that the loan may be re–financed [sic] in the first three years without penalty. Loan bal. can be paid at any time without penalty.

Addendum (3) provided: "Pioneer First Federal S & L to guarantee the fourth year refinancing through the balance of the loan period at the FNMA [Federal National Mort-

gage Association] average rate or lesser." The agreement was signed on May 17, 1982, and the Bushes paid $3,000 earnest money to Puget Sound's sales representative.

Shortly before closing, the Bushes attempted to moor their boat in slip 4 and experienced difficulty. The slip was not as large as Puget Sound represented to the Bushes in its literature and they could only get their boat in by pushing a piling out of the way.

The Bushes advised Puget Sound of the problem. Puget Sound indicated that the problem would be remedied and the slip made to conform to the prior representations. The Bushes did not believe that the slip would be made to conform and obtained other moorage.

On or about July 6, 1982, the Bushes, through their attorney, sent a letter to Puget Sound indicating that they were rescinding the purchase and sale agreement and demanding the return of their $3,000 earnest money.

Puget Sound commenced this action for breach of the purchase and sale agreement. The trial court held that the Bushes' rescission was improper because Puget Sound advised them of its intent to cure the moorage problem prior to closing. Therefore, the rescission was "premature and legally insufficient." Puget Sound's claim was nonetheless dismissed because the court concluded that Puget Sound "failed to establish that all of the terms and conditions with respect to financing provided for in the [purchase and sale agreement] could have been met at time of closing . . ."

The court awarded the Bushes $3,000 plus interest, attorneys fees and costs.

## EXCUSE OF CONDITION PRECEDENT

The trial court's dismissal was premised on Puget Sound's failure to comply with a condition precedent.[1] The

---

[1]The findings and conclusions do not clearly indicate whether the financing provision is a condition precedent or merely a promise. Puget Sound states in its brief that the purchase and sale agreement "included specific conditions about the nature of the financing that would have to be obtained as a condition to the

court noted that Pioneer First Federal Savings and Loan Association, the owner of Puget Sound, was to provide the Bushes' financing. On about June 19, 1982, Pioneer First Federal advised the Bushes in writing of its approval of their loan application to purchase the condominium under the "PioneerPlus" program. The court also found that the "PioneerPlus" financing was not consistent with the terms and conditions of the purchase and sale agreement. Despite Puget Sound's contentions to the contrary, this finding is supported by substantial evidence. The "PioneerPlus" loan did not contain a guaranteed refinancing at the end of 3 years. Rather it provided that Pioneer would refinance at its then current interest rate if the Bushes could, at that time, qualify for a loan by Pioneer's standards. The refinancing package offered in the "PioneerPlus" program also failed to provide for an interest rate at the FNMA average rate, and specified that interest would be at the rate then charged by Pioneer.

The court then concluded that this failure to provide the agreed financing was an anticipatory breach of the agreement that excused the Bushes' further performance. Puget Sound was thus barred from recovery even though the Bushes' subsequent rescission was improper and premature.

Ordinarily, the rule governing conditions precedent is:

> Where a defendant's obligation is subject to a condition precedent of performance by the plaintiff, the latter must allege and prove that he:
> (1) performed the condition precedent, or
> (2) was excused from performance.

*Langston v. Huffacker,* 36 Wn. App. 779, 786, 678 P.2d 1265 (1984) (quoting 6 S. Williston, *Contracts* § 832 (3d ed. 1962)); *accord,* Restatement (Second) of Contracts § 225 (1979). Application of this rule imposes upon the plaintiff the burden of proving performance or excuse.

In light of the findings and record, Puget Sound cannot

---

Defendants' [the Bushes] obligation to purchase." We consider this to be a concession that the financing term was a condition precedent. Accordingly, the analysis that follows is based on that concession.

successfully assert that it fully performed the condition precedent. *CHG Int'l, Inc. v. Robin Lee, Inc.,* 35 Wn. App. 512, 515, 667 P.2d 1127, *review denied,* 100 Wn.2d 1029 (1983). Puget Sound concedes as much when it states in its brief that "[t]he differences between the commitment made by the lender and the conditions set forth in the Purchase and Sale Agreement are more perceived than actual." Whether actual or perceived, there were admittedly differences. Consequently, the main issue in this case is whether the rescission by the Bushes excused Puget Sound from performing the condition precedent.

Puget Sound contends that it had until the date of closing to obtain suitable financing. Accordingly, Puget Sound maintains that a failure to provide proper financing prior to that time was meaningless unless it was unequivocally stated that suitable financing was unavailable. Furthermore, the Bushes did not rescind on that basis, but rather solely on the ground that the boat slip was not big enough. Puget Sound argues that the Bushes should not now be able to assert a different ground for rescission when the one relied upon proves to be improper.

Relying on the findings of fact and conclusions of law, the Bushes assert that the trial court found that Puget Sound failed to establish that it could provide the agreed financing by the closing date. Since the condition could not and would not be met, the Bushes maintain that they had no obligation under the agreement. *Ross v. Harding,* 64 Wn.2d 231, 236, 391 P.2d 526 (1964); *Betchard–Clayton, Inc. v. King,* 41 Wn. App. 887, 891, 707 P.2d 1361, *review denied,* 104 Wn.2d 1027 (1985).

The Bushes unequivocally rescinded the agreement. As Mr. Bush stated:

Q: Now let me go back to my question: When you made that decision on July 2nd that you weren't going to close, it really didn't matter what Puget had to say in response to your attorney's letter of July 6th, you weren't going to close; is that not correct?
A: That is about right.

■ This action of repudiation notified Puget Sound that nothing it could do would affect the Bushes' decision to rescind. As stated in *McCormick v. Tappendorf*, 51 Wash. 312, 314, 99 P. 2 (1909), "[o]ne party need not perform a condition precedent if it appears that the other party cannot or will not perform." In light of the circumstances presented, to expect Puget Sound to investigate the financing situation and rectify any discrepancies prior to the closing date would be to require it to engage in a useless act. After such a repudiation, the law does not require tender of a useless performance. *Refrigeration Eng'g Co. v. McKay*, 4 Wn. App. 963, 967, 486 P.2d 304 (1971); 4 A. Corbin, *Contracts* § 977 (1951); Restatement (Second) of Contracts § 255, comment *a* (1979). Since Puget Sound still had time to comply with the condition precedent, the Bushes' action excused Puget Sound's performance.

Once excused, Puget Sound had no reason to pursue the required financing and should not be expected to demonstrate its availability now. The burden was more properly on the Bushes. The Restatement of Contracts states: "Where a party's breach by non–performance contributes materially to the non–occurrence of a condition of one of his duties, the non–occurrence is excused." Restatement (Second) of Contracts § 245 (1979). Comment *b* to that section indicates that the burden of demonstrating that their repudiation did not contribute materially to the nonoccurrence of the condition precedent was on the Bushes. The Restatement (Second) of Contracts § 244 provides that:

> A party's duty to pay damages for total breach by non–performance is discharged if it appears after the breach that there would have been a total failure by the injured party to perform his return promise.

The trial court erroneously put the burden of proof on Puget Sound. Conclusion of law 6 states:

> To summarize, Defendants' attempted rescission based upon the size of Slip 4 at the Union Harbor Marina was premature and ineffective in view of Plaintiff's assur-

ances to Defendant, as set forth in Plaintiff's letter of July 9, 1982 (part of Exhibit "6"); however, *Plaintiff failed to establish that all of the terms and conditions with respect to financing provided for in the May 17, 1982 earnest money could have been met at time of closing,* and therefore, Plaintiff is unable to recover against Defendants upon the May 17, 1982 Purchase and Sale Agreement because Pioneer First Federal's commitment letter of June 19, 1982 was an anticipatory breach of the Purchase and Sale Agreement, excusing further performance by Defendants.

(Italics ours.)

The Bushes' repudiation excused Puget Sound from performing the condition precedent of acquiring the agreed financing. It was not necessary for Puget Sound to prove as part of its cause of action that it would have satisfied the condition precedent prior to closing. The burden of proof was on the Bushes to demonstrate that, despite their improper repudiation, the condition precedent of providing the required financing would not have been satisfied. *See Pearce v. Puget Sound Broadcasting Co.,* 170 Wash. 472, 481, 16 P.2d 843 (1932). The trial court erroneously placed the burden of proof on the plaintiff.

### ELECTION OF REMEDIES

Paragraph 12 of the purchase and sale agreement provides in part: "In the event of default by buyer, seller shall have the election to retain the earnest money as liquidated damages, or to institute suit to enforce any rights seller has."

Three elements are required for an election. (1) There must be two or more remedies; (2) the remedies must be inconsistent with one another; (3) and the party to be bound must have chosen one of the remedies. *Lange v. Woodway,* 79 Wn.2d 45, 49, 483 P.2d 116 (1971); *Bremerton Cent. Lions Club, Inc. v. Manke Lumber Co.,* 25 Wn. App. 1, 5, 604 P.2d 1325 (1979), *review denied,* 93 Wn.2d 1016 (1980). Puget Sound argues that the trial court erred in concluding that they elected their remedy by retaining the $3,000 earnest money.

First, Puget Sound asserts that the earnest money was in the hands of the realty company and no demand for return of the money was made on the company. Second, Puget Sound argues that it never instructed the realty company to retain the money. And, third, Puget Sound maintains that while they "threatened" to retain the earnest money, the threats did not constitute a present election.

Finding of fact 19 is unchallenged and is, therefore, considered a verity on appeal. *Expert Drywall, Inc. v. Brain,* 17 Wn. App. 529, 537, 564 P.2d 803 (1977), *review dismissed,* 92 Wn.2d 1004 (1978). In that finding the court stated:

> Upon execution of the May 17, 1982 Purchase and Sale Agreement, Defendants delivered to *Plaintiff's exclusive listing agent, MacPherson's Realty,* the sum of $3,000.00 cash. This cash earnest money has been retained by Plaintiff's exclusive agent from that date to date of trial. *Plaintiffs have never instructed their exclusive listing agent to return the cash* earnest money to Defendants, *notwithstanding the fact that the Defendants demanded* in writing the return of the earnest money as early as July 6, 1982, and demanded return of the earnest money on two later occasions in writing in the month of July 1982.

(Italics ours.) Finding of fact 19. The trial court was justified in concluding from these facts that Puget Sound's retention of the earnest money constituted an election. *See Whitworth v. Enitai Lumber Co.,* 36 Wn.2d 767, 771, 220 P.2d 328 (1950) (whether an election occurred under an option contract was a question for the jury).

## ATTORNEY FEES

Paragraph 12 of the purchase and sale agreement provides in part: "In the event that either the Buyer or Seller, or agent, shall institute suit to enforce any rights hereunder, the successful party shall be entitled to court costs and a reasonable attorney's fee." Both parties have requested attorney fees on appeal.

Each party has prevailed on a major issue on appeal; Puget Sound on the burden of proof issue and the Bushes

on the question of election of remedies. Accordingly, there is no "prevailing party" and each party should bear his own attorney fees on appeal. *McGary v. Westlake Investors,* 99 Wn.2d 280, 288, 661 P.2d 971 (1983); *Oneal v. Colton Consol. Sch. Dist. 306,* 16 Wn. App. 488, 493, 557 P.2d 11 (1976).

We also note that the trial court awarded the Bushes costs and attorney fees as the prevailing party at trial. In light of our disposition of this case that award must be vacated.

The judgment is reversed and the case is remanded for further proceedings consistent with the opinion.

SWANSON and GROSSE, JJ., concur.