# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LUCKY STAR ENTERPRISES, LLC, a Washington limited liability company, | No. 72907-1-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| KENT HILL PLAZA, LLC (AKA KENT EAST HILL PLAZA, LLC), a Washington limited liability company, | |
| Appellant. | FILED: March 28, 2016 |

APPELWICK, J. — Kent Hill argues the trial court erred when it ordered specific performance of the commercial lease, granted damages to the tenant, Lucky Star, and awarded Lucky Star its attorney fees and costs. It contends that Lucky Star violated its duty of good faith and fair dealing. It asserts that statements of its realtor were improperly admitted. We affirm.

## FACTS

Lucky Star Enterprises LLC owns and operates Planet Fitness franchises. In 2011, Lucky Star began negotiating to lease property in Kent from Kent Hill Plaza LLC to open a new Planet Fitness franchise.

After lengthy negotiations, Lucky Star's realtor drafted a proposed lease agreement. Kent Hill's three owners reviewed the lease with the assistance of legal counsel. The parties signed the lease in June 2012.

The disputed provision of the lease is exhibit B. This provision is titled "DESCRIPTION OF LANDLORD'S WORK." It begins, "The Landlord, at its sole cost and expense, shall provide the following minimum improvements to the Leased Premises as part of Landlord's vanilla box delivery of Premises." Subparagraph (A) states, "New HVAC [(heating, ventilation, and air conditioning)] system per Tenant's architect drawings and specifications of 2.5 ton per 1,000 SF (47.5 ton), in good working condition, on a separate thermostat, and balance tested. HVAC system to be warranted for a period of ten (10) years." Kent Hill signed the lease prior to Lucky Star providing its architect's drawings and specifications for the HVAC system.

Lucky Star delivered a schematic of its proposed HVAC system to Surinder Khela, Kent Hill's realtor, shortly after the lease was signed. This schematic was prepared by Daniel Mullin, Lucky Star's architect. It followed the Planet Fitness general design requirements. Mullin proposed capping and sealing a number of existing HVAC locations on the property's roof and installing new spaces for the HVAC system.

Kent Hill refused to comply with Lucky Star's design specifications for the new HVAC system. Kent Hill feared the costs and risks associated with cutting new holes in the roof and wanted to maintain flexibility with other tenants in the building.

2

In March 2013, Lucky Star sued for specific performance of the lease, breach of contract, and damages. A bench trial was held. On December 4, 2014, the court entered lengthy findings of fact and conclusions of law. The court ordered specific performance of the lease agreement. The court awarded Lucky Star damages of $343,348.16. And, it awarded Lucky Star its costs and attorney fees. Kent Hill appeals.

## DISCUSSION

Kent Hill makes several arguments on appeal. First, it asserts that the trial court erred in granting specific performance, because the lease was too indefinite to enforce. It challenges the trial court's finding that the cost of relocating the HVAC system was not unreasonable. It also argues that Lucky Star breached its duty of good faith and fair dealing by proposing an unreasonable design. Kent Hill contends that the trial court erred in admitting the hearsay statements of Khela. It argues that Lucky Star was not entitled to damages or attorney fees.[1] And, both parties request attorney fees on appeal.

---

[1] Kent Hill does not specifically assign error to any of the findings of fact implicated by its arguments. As a result, Lucky Star argues we should not consider Kent Hill's arguments. RAP 10.3(g) provides that an appellate court will only consider arguments included in an assignment of error or clearly disclosed in the corresponding issue. We could properly dismiss on that basis. However, this court will review the merits of an appeal where the nature of the challenge is perfectly clear. Goehle v. Fred Hutchinson Cancer Research Ctr, 100 Wn. App. 609, 613-14, 1 P.3d 579 (2000) (noting that "[a] technical violation of the rules will not ordinarily bar appellate review where justice is to be served"). Although Kent Hill failed to assign error to any specific findings of facts or conclusions of law, we can infer from its arguments which findings and conclusions it challenges. And, Kent Hill's failure to comply with RAP 10.3 has not prejudiced Lucky Star in its ability to respond. Therefore, we review the merits of Kent Hill's appeal.

3

I.    Specific Performance of the Lease

Kent Hill contends that the lease agreement cannot be enforced, because there was no meeting of the minds to create a contract. And, it argues that the terms of the lease are not definite enough for specific performance to be appropriate.

A.    Meeting of the Minds

Washington follows the objective manifestation theory of contracts. Hearst Commc'ns Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 263 (2005). We determine the parties' intent by focusing on the objective manifestations of the agreement, giving words their usual, ordinary, and popular meanings. Id. at 503-04. A court should not require specific performance of a contract unless the parties have had a meeting of the minds on all material terms of the contract. Keys v. Klitten, 21 Wn.2d 504, 520, 151 P.2d 989 (1944). When a party seeks specific performance, the contract must be proven by clear and unequivocal evidence that leaves no doubt as to the terms, character, and existence of the contract. Powers v. Hastings, 93 Wn.2d 709, 713-14, 612 P.2d 371 (1980).

Here, the trial court found that the lease terms were unambiguous. It found that exhibit B required Kent Hill to install a new HVAC system according to Lucky Star's specifications. It found that there was no provision allowing Kent Hill to submit its own HVAC design. And, it found that the Kent Hill owners knew that Lucky Star would provide the design for the HVAC system, even though Lucky Star did not provide it before the parties signed the lease.

4

Despite these findings of fact, Kent Hill argues that there was no meeting of the minds, because its owners never contemplated that the HVAC system would be relocated. In support of this claim, Kent Hill cites several cases: Sea-Van Investment Associates v. Hamilton, 125 Wn.2d 120, 881 P.2d 1035 (1994), Haire v. Patterson, 63 Wn.2d 282, 386 P.2d 953 (1963), and Keys, 21 Wn.2d 504. None of these cases involve comparable facts.

In Sea-Van, a company was interested in buying property from two sellers, and it sent a letter providing two options of how it was willing to buy the property. 125 Wn.2d at 122-23. This letter did not include a deed of trust. Id. The sellers accepted the first option. Id. The sellers ultimately did not sell their property, and the buyer sued to enforce their agreement. Id. at 124-25. The court held that even if the letter could be construed as a contract, it was missing all material terms other than price and was therefore unenforceable. Id. at 128-29. In Haire, the parties signed an earnest money agreement, and the trial court ordered specific performance requiring the parties to enter into a contract of sale. 63 Wn.2d at 283. The Haire court held that specific performance was improper, because the trial court wrote terms into the contract on which the parties never agreed. Id. at 287. Similarly, in Keys, the parties signed an earnest money agreement, which did not specify the terms of their future lease agreement. 21 Wn.2d at 505-06, 510. The court held that because the earnest money agreement did not specify these terms, it could not enforce the lease agreement. Id. at 510, 517.

But, here, the document in question was not an agreement to make an agreement. Kent Hill is not seeking rescission or arguing no contract was formed.

It is opposing specific enforcement of the HVAC provision as understood by Lucky Star. It is seeking enforcement of the HVAC provision in the manner it wishes to interpret it. The lease agreement contained the material terms Lucky Star sought to have specifically enforced. It provided that Kent Hill would be responsible for the cost of implementing certain tenant improvements. One of those improvements was the new HVAC system, according to Lucky Star's architect's drawings and specifications. Kent Hill now regrets including this provision and wishes the court to read into this provision a restriction on relocation of the HVAC units. This we will not do.

The trial court correctly concluded that the lease unambiguously provided that Lucky Star had the right to design the HVAC system and Kent Hill had the burden to install according to that design. Kent Hill could have written in limitations on relocation or made the design subject to their approval, or even delayed signing the lease until it had approved of the design. It is not enough to say that the plain meaning of the language is not what they had in mind, to establish that there was no meeting of the minds on the material terms of the lease. A contract was formed.

B.   Changes to the Exterior of the Building

Kent Hill further claims that the lease is not definite enough for specific performance to be appropriate. It asserts that even if a contract existed, the terms of the lease cannot be construed to require Kent Hill to implement changes to the exterior of the building.

Kent Hill asserts that the phrase "vanilla box delivery" in the lease limited its improvements to the interior of the building. But, Kent Hill agreed to perform

certain improvements as part of its vanilla box delivery. One of these improvements was a new HVAC system, according to Lucky Star's architect's designs. The provision referring to the new HVAC system did not limit the design to the interior of the building. And, the parties were aware that the existing HVAC units were located on the exterior of the building. Had the parties intended to limit the new HVAC system to the location of the existing units, they could have done so. Instead, they agreed that Lucky Star's architect would design the system. Therefore, we hold that the terms of the lease are sufficiently definite to grant specific performance. The trial court did not err in doing so.

II.    Cost of Relocating HVAC Units

Kent Hill also argues that relocating the HVAC units would involve unreasonable economic waste. It asserts that the trial court erred by characterizing the relocation expense as not unreasonable.

We review factual findings for substantial evidence. Brin v. Stutzman, 89 Wn. App. 809, 824, 951 P.2d 291 (1998). Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the matter asserted. Id. The party claiming error has the burden of showing that a factual finding is not supported by substantial evidence. Fisher Props., Inc. v. Arden-Mayfair, Inc., 115 Wn.2d 364, 369, 798 P.2d 799 (1990). This court defers to the trier of fact on credibility determinations. In re Marriage of Burrill, 113 Wn. App. 863, 868, 56 P.3d 993 (2002).

Kent Hill called a structural engineer, Charles Williams, to testify. Williams testified that, in his opinion, cutting holes in the roof for the HVAC system could

7

result in leaking. But, he acknowledged that he had not reviewed the architect's drawings and specifications for the Kent property. He confirmed that his opinion was based on general possibilities, not specific to the Kent property. Kent Hill's owners testified that they believed cutting new holes in the roof would be expensive. One owner, Manmohan Dhillon, said that when he had to replace a roof on another building he owned, the cost was over $100,000. Dhillon testified that he obtained an oral bid from a contractor estimating that the cost of replacing the roof of the Kent property could be around $200,000 or $250,000. Kent Hill did not submit a written third-party estimate to build out the HVAC according to the Lucky Star design. Based on these approximate figures, the court found that Kent Hill's worst case scenario of adopting Lucky Star's design would be $200,000. But, the court found that this figure was not an accurate representation of the cost, because it was not corroborated by an independent source.

Lucky Star's owners and its architect also testified about the benefits of their proposed design. Specifically, Mullin testified that Lucky Star's design would meet the internal visual aesthetic of the Planet Fitness brand and would maximize air distribution in an efficient way. However, he could not quantify the difference in efficiency between his proposed design and the existing HVAC locations. Additionally, counsel for Lucky Star explained that the total gross value of this 10 year lease would be $2,621,968.00.

The trial court explicitly found Mullin's testimony to be persuasive, and the testimony of the three Kent Hill owners to be problematic. We defer to the trial

8

court's credibility determinations. See Burrill, 113 Wn. App. at 868. The trial court

weighed the evidence and made this finding of fact:

> The total gross value of the 10 year lease is $2,621.968.00.2 [sic].
> See Exhibit 11. Assuming, arguendo, that Kent Hill's $200,000
> estimate to install Lucky Star's HVAC system is correct, that
> represents just over 7% of the total value of the contract. Even
> considering this unsupported figure, this is not an unreasonable cost
> for this ten year multi-million dollar lease.

We hold that the trial court did not err in finding that the cost of the new

HVAC system was not unreasonable.

III.    Implied Duty of Good Faith

Kent Hill asserts that Lucky Star breached its duty to operate in good faith

by proposing an unreasonable design and refusing to compromise.

Every contract involves an implied duty of good faith and fair dealing.

Badgett v. Sec. State Bank, 116 Wn.2d 563, 569, 807 P.2d 356 (1991). This duty

requires that the parties perform the terms of the agreement in good faith. Id. It

does not permit the parties to add or contradict the terms of the agreement. Id. at

572; Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc., 86 Wn. App. 732, 738,

935 P.2d 628 (1997). When the contract gives one party discretion to determine

a contract term, the duty of good faith applies. Goodyear Tire, 86 Wn. App. at 738.

Here, the lease agreement gave Lucky Star discretionary authority to design

the new HVAC system. The court concluded that Kent Hill did not show that the

design was egregiously expensive, impractical or impossible, or inconsistent with

industry standards. Thus, the trial court concluded that Kent Hill had "failed to

9

establish by a preponderance of evidence that Lucky Star's proposed HVAC system was not made in good faith."

The trial court made extensive factual findings that supported this conclusion. It credited the testimony of Mullin, Lucky Star's architect, concerning the reasons for Lucky Star's design. And, the trial court found that Williams's testimony on Kent Hill's behalf was general in nature, not tied to the specific requirements of the property. Therefore, the court found that Williams's opinion did not preclude the implementation of Lucky Star's HVAC system. Nor did the court find Kent Hill's estimation of the worst case scenario estimate to be reliable. And, as discussed above, substantial evidence supports the trial court's finding that even this $200,000 estimate was not an unreasonable cost.

Despite these facts, Kent Hill argues that Lucky Star violated its duty of good faith by designing a plan that called for changes above the roof, and by refusing to give a justification when it rejected Kent Hill's plan. Kent Hill asserts that Puget Sound Service Corp. v. Bush, 45 Wn. App. 312, 724 P.2d 1127 (1986) and McEachren v. Sherwood & Roberts, Inc., 36 Wn. App. 576, 675 P.2d 1266 (1984) compel this conclusion. In Puget Sound, the parties executed a purchase and sale agreement for a condominium, which included financing provisions. 45 Wn. App. at 314-15. Prior to closing, the buyers discovered that the condominium's moorage slip was smaller than the seller had represented it. Id. at 315. The seller assured them that this would be remedied, but the buyers did not believe it and rescinded the contract. Id. The court held that the buyers' repudiation excused the seller

10

from performing the condition precedent of acquiring financing.[2] Id. at 319. In McEachren, the parties signed an earnest money agreement that provided that the seller and purchaser would sign a rental agreement prior to closing. 36 Wn. App. at 578. The buyers signed the rental agreement, but the seller later modified it without notifying the buyers. Id. at 579. After discovering the change, the buyers refused to proceed with the transaction. Id. The court held that the buyers breached their duty to operate in good faith by reneging on the deal without giving the seller an opportunity to address their concerns. Id. at 580.

Lucky Star's actions are not comparable to those of the breaching parties in Puget Sound and McEachren. This is so, because Lucky Star complied with its responsibilities under the lease. It timely paid its first month's rent and security deposit in the amount of $25,879.17. It submitted its schematic drawing to Kent Hill soon after the lease was signed. Lucky Star representatives met with Kent Hill representatives in October 2012 to do a walkthrough of the property and take possession. At this time, the parties made an effort to resolve their differences concerning the HVAC system, but were unsuccessful. Lucky Star was, at all times, willing and able to perform its obligations under the lease.

Additionally, the undisputed facts show that Lucky Star had several reasons supporting its design of the new HVAC system. The new system would comport with the general Planet Fitness aesthetic of open ceiling designs. Kent Hill's

---

[2] Contrary to Kent Hill's assertions, Puget Sound did not address the implied duty of good faith and fair dealing. Instead, this case stands for the proposition that a party is not required to comply with a condition precedent if the other party has already rescinded the contract. Puget Sound, 45 Wn. App. at 318.

proposed design—simply replacing the old HVAC units without moving their location—would be problematic for Lucky Star. The building's existing HVAC units are too close to the demising wall separating Lucky Star from another tenant. This would result in inefficient air distribution. And, the duct system Kent Hill preferred would not allow for maximum distribution of air into an open space or for air to be optimally distributed in four directions from a mid-point space. Thus, Lucky Star's insistence that Kent Hill comply with the terms of the lease by implementing a new HVAC system according to Lucky Star's specifications did not violate the duty of good faith and fair dealing. That Kent Hill was displeased with those specifications does not mean Lucky Star exercised its discretionary authority in bad faith.

IV.    Hearsay Statements of Khela

Kent Hill argues that the trial court erred in permitting testimony regarding Khela's statements made after the lease was signed. And, it contends that the trial court erred by imputing knowledge to Kent Hill based on Khela's testimony.

At trial, Lucky Star sought to introduce evidence of Khela's prior statements through Christopher Odum, one of the owners of Lucky Star. Kent Hill objected. A lengthy conversation between the court and counsel ensued as to whether Khela was Kent Hill's agent at the time. The court stated multiple times that it was overruling Kent Hill's objection, because Khela was Kent Hill's agent. But, Kent Hill persisted, providing additional reasons why Khela could not be considered Kent Hill's agent. Finally, the trial court instructed Lucky Star to call its next witness while it mulled over this question. Lucky Star called Khela as its next witness. Khela testified as to his conversations with Lucky Star and Kent Hill concerning the

12

HVAC system and his attempts to bridge the gap between the parties. Kent Hill did not object during Khela's testimony. Lucky Star did not recall Odum to testify about Khela's statements.

Kent Hill's challenge to this evidence is not properly before this court. See RAP 2.5(a) (an appellate court may refuse to review a claim of error that was not raised in the trial court). By not objecting to Khela's out-of-court statements when Khela was testifying, Kent Hill failed to preserve the issue for appellate review. See RAP 2.5(a); Washburn v. Beatt Equip. Co., 120 Wn.2d 246, 290, 840 P.2d 860 (1992) (noting that an appellate court will generally not consider arguments not presented to the trial court).

And, even if Kent Hill's objection to Odum's proffered testimony could be construed as extending to Khela's testimony, Kent Hill's argument is not persuasive. First, Kent Hill does not identify any specific prior out-of-court statement that was erroneously admitted. Assuming one existed, Kent Hill has not identified a finding of fact that is erroneous because the evidence was admitted. Nor has it challenged a conclusion of law premised on Khela's statements. Thus, Kent Hill's claim of error is both unclear and legally inadequate.

Second, even if Kent Hill had identified such a statement, the trial court did not err in permitting Khela to testify as to his prior out-of-court statements. Under ER 801(d)(2), admissions by a party opponent are not hearsay when the statement is offered against a party and is "a statement by the party's agent or servant acting within the scope of the authority to make the statement for the party." An agency relationship between broker and seller generally exists until the broker procures a

buyer, and the buyer signs a contract. Pilling v. E. & Pac. Enters. Trust, 41 Wn. App. 158, 165, 702 P.2d 1232 (1985). But, when the language of the contract conditions the broker's commission on closing, the agency relationship exists until closing. Cogan v. Kidder, Mathews & Segner, Inc., 97 Wn.2d 658, 663-64, 648 P.2d 875 (1982).

This case is analogous to Cogan, because the terms of the agreement extended the agency relationship. The lease provided that the commission would be "paid by Landlord 25% upon lease execution and 75% upon Tenant's occupancy." This language expressly conditioned Khela's receipt of the majority of his commission upon Lucky Star occupying the premises. The lease was signed in June 2012. Khela received Lucky Star's proposed design and passed it along to the Kent Hill owners in July 2012. Khela obtained bids for the cost of replacing the existing HVAC units in July 2012 as well. Around this time, Khela acted as an intermediary between Lucky Star and Kent Hill, trying to bridge the gap so as to prevent the deal from falling apart. Then, in October 2012, representatives of Lucky Star and Kent Hill met so that Lucky Star could take possession of the premises. After this point, Lucky Star and Kent Hill communicated through counsel, not through Khela.

Cogan is controlling here. Kent Hill does not argue that Cogan is no longer good law or that it has been superseded by statute. And, it is possible to harmonize Cogan with chapter 18.86 RCW, on which Kent Hill relies. RCW 18.86.070 provides that the agency relationship continues until the earliest of several situations occurs. One situation is "[c]ompletion of performance by the broker."

14

RCW 18.86.070(1)(a). Read together with Cogan, this means that the agency relationship continues until a buyer signs a contract—unless the parties agree otherwise. The parties' agreement dictates that Khela remained Kent Hill's agent until Lucky Star took possession of the premises. Khela's statements made between the time the lease was signed and the time Lucky Star took possession were properly admitted as an admission of a party opponent.

Kent Hill also contends that the trial court erroneously imputed knowledge to Kent Hill based on communications with Khela. However, the question of whether knowledge was imputed to a principal is different from whether an agent has authority to speak for the principal. Moreover, Kent Hill does not identify any specific facts or knowledge that were improperly imputed to Kent Hill.

Therefore, we hold that the trial court did not err in permitting Khela to testify about his prior out-of-court statements.

V.    Attorney Fees and Costs

Both parties request attorney fees and costs on appeal. They assert they are entitled to fees and costs, because the lease provided that the prevailing party in litigation under the lease would be entitled to them.

In Washington, attorney fees are recoverable if permitted by statute, contract, or a recognized ground in equity. Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co., 144 Wn.2d 130, 143, 26 P.3d 910 (2001).

Here, the lease provided, "The prevailing party in any litigation or other proceeding to enforce such party's rights under this Lease will be entitled in such litigation or proceeding to an award of the costs of such litigation or proceeding,

15

including attorney's fees and expenses." This provision applies to both parties. Thus, as the prevailing party, Lucky Star is entitled to attorney fees and costs on appeal.[3]

We affirm.

Applewick, J.

WE CONCUR:

Leach, J.

Cox, J.

---

[3] Kent Hill also asks this court to reverse the trial court's award of damages and attorney fees to Lucky Star. It has not indicated any reason to vacate this award other than the substantive claims already presented. Therefore, we affirm the damages and attorney fees for Lucky Star.