[Nos. 39183-6-I; 39187-9-I. Division One. February 2, 1998.]

ELLEN R. BRIN, *Respondent*, v. ROGER JAMES STUTZMAN, *Appellant*.

ELLEN R. BRIN, *Appellant*, v. ROGER JAMES STUTZMAN, *Respondent*.

810

812

*Cyrus R. Vance, Jr., Barbara H. Schuknecht,* and *William J. Crittenden* of *McNaul Ebel Nawrot Helgren & Vance, P.L.L.C.,* for appellant/respondent Stutzman.

*Robert B. Gould* of *Law Offices of Robert B. Gould;* and *Brian J. Waid,* for appellant/respondent Brin.

KENNEDY, J. — Ellen Brin filed a replevin action against Roger Stutzman to recover several items of personal property. Stutzman asserted a malicious prosecution counterclaim based on Brin's factual allegation that he "engaged in a course of conduct of preying upon women and obtaining from them items of personal [property] and monies under false pretenses." Clerk's Papers at 4. Brin then filed a separate securities action to recover financial losses associated with options trading recommended by Stutzman, seeking damages under RCW 21.20.430(1) for Stutzman's alleged violation of RCW 21.20.010 and damages under an implied private cause of action for his alleged violation of RCW 21.20.020.

Stutzman appeals the replevin judgment contending, among other things, that the trial court erred by dismissing his malicious prosecution counterclaim. Brin appeals the securities judgment, contending that the trial court erred by not holding Stutzman civilly liable under RCW 21.20.430(1) for violating RCW 21.20.010. Stutzman cross-appeals, contending, among other things, that the trial court erred by holding him civilly liable for violating RCW 21.20.020. Because the appeals were linked for oral argument and disposition, and arise out of the same general facts, we find it appropriate to resolve them in a single opinion.

A defendant may only assert a malicious prosecution counterclaim under RCW 4.24.350 based on an improperly filed cause of action as a whole. A favorable civil judgment—absent evidence of fraud, perjury, or other corrupt means—is conclusive evidence of probable cause to initiate and maintain the cause of action even if later reversed on appeal. And probable cause is an absolute defense to a malicious prosecution claim. Brin prevailed at trial on her replevin action as a whole. Therefore, the trial court did not err by dismissing Stutzman's malicious prosecution counterclaim. In addition, we conclude that the trial court did not abuse its discretion by refusing to impose CR 11 sanctions against Brin and that sufficient evidence in the

record supports the trial court's order for replevin of the personal property to Brin. Accordingly, we affirm the replevin judgment.

RCW 21.20.430(1) imposes civil liability on persons who violate RCW 21.20.010 if and only if they possess the attributes of a seller. RCW 21.20.020 governs only "investment advisers" as defined by RCW 21.20.005(6). Stutzman did not possess the attributes of a seller and was not an "investment adviser" under RCW 21.20.005(6). Therefore, even assuming that Stutzman engaged in conduct proscribed by the antifraud provisions of RCW 21.20, the trial court erred by awarding Brin restitution of fees paid to Stutzman for his investment advice. Accordingly, we reverse the securities judgment. We conclude, however, that the trial court did not abuse its discretion by refusing to impose CR 11 sanctions against Brin in the securities action.

## SUBSTANTIVE FACTS

Brin's husband died in 1987. She inherited their house, subject to a mortgage, and her husband's life insurance proceeds. Brin hired Jay Friedman to invest the proceeds of the life insurance, which at no time exceeded $750,000. Her portfolio under Friedman consisted of very conservative blue chip investments, providing Brin with a predictable stream of income. Following her husband's death, Brin provided financial support to her children and her parents. She did not have a job and did not plan to get one while her parents remained dependent on her for personal care.

In 1991, Brin met Stutzman. They began a social relationship in May 1992, and became sexually intimate in November 1992. Before the relationship began, Stutzman owned a business that he sold for approximately $200,000. Stutzman misrepresented to Brin that he sold the business for $13 million, splitting the proceeds with his former wife. After the sale of his business, Stutzman supported himself, at least in part, by investing in options.

Brin informed Stutzman that she was concerned about her financial situation because her spending exceeded her investment earnings by approximately $2,000 a month. Stutzman told her that she could earn a higher return on her assets if she invested in options. At the time, Brin intended to refinance her home to take advantage of a drop in interest rates and to purchase a new car. Stutzman suggested that she take $100,000 out of the principal in her home to invest in options. Instead, Brin invested $30,000 into an options account, $20,000 of which she obtained from refinancing her house. She selected the options in which she would invest based on Stutzman's advice; in each instance, Stutzman purchased for his own account the same options that he advised Brin to purchase. Brin's stockbroker, acting at her direction, made the actual purchases of the options for her account.

In return for his investment advice, Stutzman suggested that they evenly split the profits that Brin earned on the options she purchased; Brin agreed to this arrangement. Stutzman also informed Brin that he would cover her losses, but he never did. Brin's gains from the options trades totaled $34,112.50; her losses totaled $36,240.87. Brin, in accord with the profit sharing agreement, paid Stutzman a total of $13,360. She also paid her stockbroker $5,529.88 in commissions.

On July 9, 1994, Brin encountered Ruth Rupert outside Stutzman's apartment, and discovered that Rupert was also having a romantic relationship with Stutzman. Brin terminated her relationship with Stutzman. Shortly thereafter, Brin met with Rupert and Joanne Bay, another woman with whom Stutzman was having a romantic relationship, to discuss Stutzman and their relationships with him.

Stutzman retained several items of Brin's personal property after their relationship ended. In a letter dated July 13, 1994, Brin's counsel demanded that Stutzman return thirty-three items of personal property to Brin by July 20, including a 1985 Subaru automobile, a 1988 Subaru

automobile, a computer, a treadmill, and Brin's investment records. Stutzman unsuccessfully attempted to contact Brin's counsel to discuss Brin's demands.

## PROCEDURAL HISTORY

On July 25, 1994, Brin filed a replevin action against Stutzman to recover the 1985 Subaru, the 1988 Subaru, the computer, the treadmill, and her investment records. In addition to pleading the requirements for a replevin action as set forth in ch. 7.64 RCW, Brin alleged that Stutzman preyed upon women for financial gain: "Upon information and belief, plaintiff believes, and hence alleges, that defendant has engaged in a course of conduct of preying upon women and obtaining from them items of personal possession and monies under false pretenses." Clerk's Papers at 4.

Stutzman claimed ownership of the 1985 Subaru, the 1988 Subaru, the computer, and the treadmill; he returned Brin's investment records. Stutzman then asserted a malicious prosecution counterclaim and moved for CR 11 sanctions based on Brin's factual allegation that he preyed upon women for financial gain.

The trial court ordered replevin of the personal property to Brin but awarded Stutzman $2,400 that he had advanced to Brin for repairs on the 1988 Subaru. Although the court found that Brin failed to prove that Stutzman preyed upon women for financial gain, it nonetheless dismissed Stutzman's malicious prosecution counterclaim with prejudice. The trial court also rejected Stutzman's request for CR 11 sanctions against Brin.

On September 30, 1994, Brin filed a securities action against Stutzman. The trial court found that Stutzman not only acted as "an investment advisor for a fee," but also recommended "unsuitable" securities to Brin based on her financial situation. Clerk's Papers at 540-41. The trial court concluded that Brin was "entitled to restitution of the fees paid to [Stutzman], but not to damages, costs, or attorney's

fees under RCW 21.20 *et seq.*" Clerk's Papers at 529. The trial court rejected Stutzman's request for CR 11 sanctions against Brin.

## DISCUSSION

### I. REPLEVIN ACTION

Stutzman appeals the replevin judgment, contending that the trial court erred by dismissing his malicious prosecution counterclaim, ordering replevin of the personal property to Brin, and refusing to impose CR 11 sanctions against Brin. Brin requests attorney fees for defending an appeal she deems frivolous.

#### A. Dismissal of Stutzman's Counterclaim for Malicious Prosecution

Actions for malicious prosecution are not favored in the law. *Hanson v. City of Snohomish*, 121 Wn.2d 552, 557, 852 P.2d 295 (1993).

> To maintain an action for malicious prosecution, the plaintiff must allege and prove (1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution.

*Gem Trading Co. v. Cudahy Corp.*, 92 Wn.2d 956, 962-63, 603 P.2d 828 (1979) (quoting *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 497, 125 P.2d 681 (1942)), *affirming* 22 Wn. App. 278, 588 P.2d 1222 (1978).

Although courts continue to list all five elements,[1] the

---

[1]*See, e.g., Hanson*, 121 Wn.2d at 558; *Bender v. City of Seattle*, 99 Wn.2d 582, 593, 664 P.2d 492 (1983); *McDaniel v. City of Seattle*, 65 Wn. App. 360, 367-69, 828 P.2d 81 (1992); *Banks v. Nordstrom, Inc.*, 57 Wn. App. 251, 255-56, 787 P.2d

Legislature abrogated "the common law requirement of showing prior abandonment by the plaintiff, or termination in favor of the defendant" by permitting "a defendant to cross-claim for malicious prosecution" under RCW 4.24.350. *Fenner v. Lindsay*, 28 Wn. App. 626, 630, 625 P.2d 180 (1981); *accord Pay n' Save Corp. v. Eads*, 53 Wn. App. 443, 447, 767 P.2d 592 (1989). Malice and want of probable cause still "constitute the gist of a malicious prosecution action." *Hanson*, 121 Wn.2d at 558 (citing *Peasley*, 13 Wn.2d at 497). Consequently, proof of probable cause is an absolute defense to a malicious prosecution claim. *Hanson*, 121 Wn.2d at 558; *Jacques v. Sharp*, 83 Wn. App. 532, 536, 922 P.2d 145 (1996).

1. Malicious Prosecution Counterclaim Under RCW 4.24.

Stutzman appeals the trial court's dismissal of his malicious prosecution counterclaim under RCW 4.24.350, which was based on Brin's factual allegation that Stutzman preyed upon women for financial gain. Relying on the common law of other jurisdictions, Stutzman notes that malicious prosecution counterclaims are permitted to promote judicial efficiency and protect defendants from meritless attacks. *See Paramount Gen. Hosp. Co. v. Jay*, 213 Cal. App. 3d 360, 367, 261 Cal. Rptr. 723, 726-27 (1989). To this end, Stutzman contends that the Legislature intended to permit malicious prosecution counterclaims under RCW 4.24.350 based on improperly averred factual allegations made in support of a cause of action that may otherwise have merit. We disagree.

 First, the plain language of RCW 4.24.350 requires that the defendant assert a malicious prosecution counterclaim based on an "action," not merely a factual allegation:

In any action for damages, whether based on tort or contract

953 (1990); *Peterson v. Littlejohn*, 56 Wn. App. 1, 8-9, 781 P.2d 1329 (1989); *Orwick v. City of Seattle*, 37 Wn. App. 594, 601, 682 P.2d 954, *aff'd in part, rev'd in part*, 103 Wn.2d 249, 692 P.2d 793 (1984).

or otherwise, a claim or counterclaim for damages may be litigated in the principal action for malicious prosecution on the ground that the action was instituted with knowledge that the same was false, and unfounded, malicious and without probable cause in the filing of such action, or that the same was filed as a part of a conspiracy to misuse judicial process by filing an action known to be false and unfounded.

RCW 4.24.350(1). "A fundamental rule of construction is, absent ambiguity, the plain wording of the statute controls." *Nelson v. McClatchy Newspapers, Inc.*, 131 Wn.2d 523, 530, 936 P.2d 1123, *cert. denied*, __ U.S. __, 118 S. Ct. 175, 139 L. Ed. 2d 117 (1997). Action "in its legal sense means a lawsuit brought in a court, a formal complaint with the jurisdiction of a court of law." BLACK'S LAW DICTIONARY 28 (6th ed. 1990); *see also Biggs v. Vail*, 119 Wn.2d 129, 136, 830 P.2d 350 (1992) (using "action" interchangeably with "lawsuit"). Stutzman points to no evidence that the Legislature intended "action" to mean anything other than its ordinary legal definition.

Second, Stutzman misconstrues the case law. The cases he cites permit a defendant to assert a malicious prosecution claim based on a separate and severable invalid cause of action included within a complaint asserting other separate and severable valid causes of action. *See, e.g. Albertson v. Raboff*, 46 Cal. 2d 375, 295 P.2d 405, 407-08 (1956) (allowing a malicious prosecution suit to proceed even though a final judgment had not been secured on a related but severable claim); *Tabaz v. Cal Fed Fin.*, 27 Cal. App. 4th 789, 33 Cal. Rptr. 2d 134, 137 (1994) (holding that a plaintiff may base a malicious prosecution claim on individual claims if the other claims are severable and not "simply different theories for recovering on the same injury"); *Brown v. Monticello State Bank*, 360 N.W.2d 81, 86 (Iowa 1984) ("[I]n those instances in which a plaintiff in a malicious litigation action was a defendant in a prior action containing more than one separate and distinct cause of action, such plaintiff need only show a successful result on the separate cause of action which serves as a basis for the

malicious prosecution action."). Stutzman cites no cases that permit a malicious prosecution claim based only on an improperly averred factual allegation made in support of an otherwise valid claim.

Third, Washington courts have "strictly limited the right to bring suit for malicious prosecution of civil actions, reasoning that such suits intimidate prospective litigants and that the public policy favors open courts in which a plaintiff may fearlessly present his case." *Gem Trading Co. v. Cudahy Corp.*, 22 Wn. App. 278, 283, 588 P.2d 1222 (1978) (citing *Abbott v. Thorne*, 34 Wash. 692, 76 P. 302 (1904)), *aff'd*, 92 Wn.2d 956, 603 P.2d 828 (1979). This court has previously declined to rely on California malicious prosecution case law because California does not adhere to Washington's restrictive view of malicious prosecution claims. *See Pay 'n Save*, 53 Wn. App. at 447 n.4. Therefore, even if the cases cited by Stutzman supported his view, which they do not, they would not necessarily be persuasive.

Fourth, CR 12(f) authorizes a court to strike "any redundant, immaterial, impertinent, or scandalous matter." CR 11 permits a court to impose sanctions against "the person who signed" a pleading without a factual basis. Therefore, in a case in which the plaintiff does maliciously allege facts without probable cause, the trial court has adequate means upon which to promote judicial efficiency and protect defendants from meritless attacks.

■ In light of the foregoing, we hold that a defendant may only assert a malicious prosecution counterclaim under RCW 4.24.350 based on an improperly filed cause of action and not on an invalid factual allegation made in support of a cause of action that is otherwise supported by probable cause. We emphasize that we are presented with a case in which the defendant based his malicious prosecution counterclaim on a single factual allegation that the plaintiff failed to prove at trial. Accordingly, we expressly leave open the possibility that a defendant could assert a malicious prosecution counterclaim based on an invalid severable

cause of action included within a complaint asserting other valid severable causes of action.

## 2. Probable Cause to Initiate and Maintain the Replevin Action

Viewing the replevin action as a whole, Brin contends that her favorable civil judgment is conclusive evidence that she had probable cause to institute and maintain her replevin action as a matter of law. She thus maintains that the trial court properly dismissed Stutzman's counterclaim.

■ ■ A criminal conviction—absent evidence of fraud, perjury or other corrupt means—is conclusive evidence of probable cause to initiate and maintain a cause of action even if later reversed on any ground other than absence of probable cause. *Hanson*, 121 Wn.2d at 559-60 ("A conviction is strong evidence that there was enough of a case to persuade a jury of guilt beyond a reasonable doubt, and thus is evidence that there was, at the very least, probable cause to prosecute."). The RESTATEMENT (SECOND) OF TORTS extends the rule to civil proceedings:

> As in the case of the initiation of criminal proceedings, a decision by a competent tribunal in favor of the person initiating civil proceedings is conclusive evidence of probable cause. This is true although it is reversed upon appeal and finally terminated in favor of the person against whom the proceedings were brought.

RESTATEMENT (SECOND) OF TORTS § 675 cmt. b. (1977).

Stutzman maintains that Washington should not extend the presumption of probable cause to civil litigants who prevail at trial because standards of proof differ between civil and criminal proceedings. In other words, Stutzman argues that prevailing in a civil proceeding is less indicative of probable cause than is a criminal conviction.

Public policy favors open courts where prospective civil litigants can fearlessly institute their causes of action. *Gem Trading*, 22 Wn. App. at 283. To this end, a civil plaintiff

need not have the degree of certainty as to the existence of the facts on which the proceedings is based that is required of a prosecutor in a criminal proceeding. Instead, the civil plaintiff must have a reasonable belief that the relevant facts can be established through the trial process. RESTATE-MENT (SECOND) OF TORTS § 675 cmt. d. (1977). A favorable civil judgment strongly indicates that the civil plaintiff had a reasonable belief that the facts alleged to support the civil claim could be proven through the trial process. Therefore, we hold that a favorable civil judgment—absent evidence of fraud, perjury, or other corrupt means—is conclusive evidence of probable cause to initiate and maintain the civil action even if it is later reversed on appeal.[2]

Stutzman next contends that Brin procured the favorable civil judgment by fraud, perjury, or other corrupt means. Specifically, Stutzman maintains that Brin based her entire replevin action on Stutzman's alleged proposal of marriage. Clerk's Papers at 24-29. The trial court, however, found that "Stutzman made no formal proposal of marriage to [Brin]." Clerk's Papers 1111. Therefore, the trial court must not have based its judgment on Brin's statements that Stutzman proposed marriage to her. Moreover, the trial court expressly found that Brin transferred the computer to Stutzman "on the condition that [Stutzman] would eventually marry her, as this was her perception[.]" *Id.* We find no indication in the record that Brin's perception that Stutzman would eventually marry her was not held in good faith, however misguided her perception may have been. Accordingly, Stutzman has failed to establish that Brin procured her favorable judgment by fraud, perjury, or other corrupt means.

In sum, Brin prevailed at trial on the replevin action as

---

[2]We note that extending this rule to civil proceedings is not at odds with RCW 4.24.350. Although this court has held that RCW 4.24.350 abrogated "the common law requirement of showing prior abandonment by the plaintiff, or termination in favor of the defendant" to assert a malicious prosecution claim, *Fenner*, 28 Wn. App. at 630, the plaintiff may still use a favorable termination as an absolute defense to a malicious prosecution claim.

a whole. Therefore, Brin had probable cause to initiate and maintain the replevin action. Because probable cause is an absolute defense to a malicious prosecution claim, the trial court did not err by dismissing Stutzman's malicious prosecution counterclaim under RCW 4.24.350.

### B. Order for Replevin of the Personal Property to Brin

Stutzman assigns error to the trial court's order for replevin of the computer, treadmill, and 1985 Subaru to Brin, to the extent that the award prevents him from maintaining his malicious prosecution action. But a favorable civil judgment is conclusive evidence of probable cause to bring the cause of action even if "reversed upon appeal and finally terminated in favor of the person against whom the proceedings were brought." RESTATEMENT (SECOND) OF TORTS § 675 cmt. b. (1977). Therefore, the trial court's alleged error in awarding the personal property to Brin is inconsequential to Stutzman's right to maintain his malicious prosecution counterclaim. Nevertheless, because Stutzman argues that the trial court's alleged error goes to the question of probable cause to bring the replevin action, we address his contentions.

■■ "Appellate review is limited to determining whether the trial court's findings of fact are supported by substantial evidence and, if so, whether the findings in turn support the conclusions of law." *Willener v. Sweeting*, 107 Wn.2d 388, 393, 730 P.2d 45 (1986). "Substantial evidence is evidence in sufficient quantum to persuade a fairminded person of the truth of the declared premise." *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 819, 828 P.2d 549 (1992) (citations omitted). The party challenging the finding bears the burden of showing that it is not supported by substantial evidence. *Nordstrom Credit, Inc. v. Department of Revenue*, 120 Wn.2d 935, 939-40, 845 P.2d 1331 (1993).

As we have already noted, the trial court found that Stutzman never proposed marriage to Brin, but it found

that Brin transferred the computer to Stutzman "on the condition that [Stutzman] would eventually marry her, as this was her perception[.]" Clerk's Papers at 1111. Finding that the condition was never met, the trial court ordered replevin of the computer and treadmill to Brin. Stutzman contends that the court erred in concluding that the computer and treadmill belonged to Brin, because a gift cannot be conditioned on a unilateral expectation of marriage. *See generally* Elaine Marie Tomko, Annotation, *Rights in Respect of Engagement and Courtship Present When Marriage Does Not Ensue*, 44 A.L.R.5TH 1 (1996). Brin, on the other hand, maintains that a gift was never made.

"The requirements for a completed gift are: (1) an intention of the donor to presently give; (2) a subject matter capable of passing by delivery; (3) an actual delivery; and (4) an acceptance by the donee." *Sinclair v. Fleischman*, 54 Wn. App. 204, 207, 773 P.2d 101 (1989). "A gift will not be presumed, but one who asserts title by this means must prove it by clear, convincing, strong, and satisfactory evidence." *In re Estate of Hamilton* 26 Wn.2d 363, 368, 174 P.2d 301 (1946); *accord McCarton v. Estate of Watson*, 39 Wn. App. 358, 364, 693 P.2d 192 (1984).

Brin testified that the computer and treadmill were not intended as gifts. Brin explained that the treadmill was for Stutzman's use while he lived in his apartment and that the computer was so they could work at side-by-side computers. The record also reflects that Stutzman told Brin that she could take back the treadmill and computer whenever she wanted. Therefore, substantial evidence in the record supports the trial court's conclusion that Stutzman failed to prove by clear and convincing evidence that the computer and treadmill were gifts.

Stutzman testified that he purchased the 1985 Subaru from Brin for $1,000 and subsequently spent over $1,300 repairing it. Brin admitted that she received $1,000 from Stutzman "so that [she] could have [the] thousand dollars that [she] would have gotten from Bellevue Subaru." Report of Proceedings 87 (July 25-26). Arguably, Brin's

testimony supports a finding that she sold the car to Stutzman instead of to Bellevue Subaru. What is more, Stutzman spent over $1,300 repairing the car after he gave the $1,000 to Brin.

Brin counters by pointing to substantial evidence in the record supporting the finding that Brin did not sell the 1985 Subaru to Stutzman. The title to the 1985 Subaru remained in Brin's name. *See Crawford v. Welch*, 8 Wn. App. 663, 664, 508 P.2d 1039 (1973) (registration and title certificates create a rebuttable presumption of ownership). Brin also maintained insurance on the 1985 Subaru after Stutzman gave her the $1,000. Brin also testified that, after the $1,000 transfer, Stutzman asked her for permission to allow his son and his son's girlfriend to drive the car.

In its written findings, the trial court found that Stutzman used the 1985 Subaru because of its four-wheel drive feature. In its oral ruling, the trial court opined that the $1,000 was a reasonable use fee. *See State v. Bynum*, 76 Wn. App. 262, 266, 884 P.2d 10 (1994) (noting that "an appellate court may use the trial court's oral ruling to interpret [consistent] written findings and conclusions"), *review denied*, 126 Wn.2d 1012 (1995). Therefore, although the circumstances surrounding the $1,000 transfer would permit the inference that Brin sold the car to Stutzman, substantial evidence in the record supports the trial court's conclusion that Brin did not sell the 1985 Subaru to Stutzman.

In sum, substantial evidence in the record supports the trial court's findings of fact, which in turn support its conclusions of law that the computer, the treadmill, and the 1985 Subaru belong to Brin. Thus, Stutzman's contention that the trial court's alleged error defeats the conclusion that Brin had probable cause to bring the action is without merit. Accordingly, we affirm the trial court's order for replevin of the personal property to Brin.

## C. Civil Rule 11 Sanctions

Stutzman appeals the trial court's refusal to impose CR

11 sanctions against Brin in the replevin action, contending that after the depositions of Ruth Rupert and Joanne Bay, Brin had no factual basis to maintain her allegation that he preyed upon women for financial gain. Stutzman also contends that Brin's counsel failed to make a reasonable investigation before filing Brin's complaint.

A trial court's decision to impose or deny CR 11 sanctions is reviewed for abuse of discretion. *Biggs v. Vail*, 124 Wn.2d 193, 197, 876 P.2d 448 (1994); *Madden v. Foley*, 83 Wn. App. 385, 389, 922 P.2d 1364 (1996). A complaint may be subject to CR 11 sanctions if it lacks a factual or legal basis, and the attorney who signed the complaint failed to conduct a reasonable inquiry into the factual and legal bases of the claim. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 219-20, 829 P.2d 1099 (1992). "The burden is on the movant to justify the request for sanctions." *Biggs*, 124 Wn.2d at 202.

Rupert testified in her deposition that Stutzman misrepresented to her that he was worth $6 million, asked her to buy him things including a boat, lied about his other relationships, demanded to know about her business affairs, and tried to take her business clients. Bay testified in her deposition that Stutzman lied to her about his other relationships, pried into her business affairs, received free lodging from her, and suggested or hinted that she buy him things. This testimony, particularly when viewed in light of Brin's own relationship with Stutzman, gave Brin a sufficient factual basis to maintain her allegation that Stutzman preyed upon women for financial gain, after the depositions of Rupert and Bay.

Because we conclude that Brin had a sufficient legal basis for her claim, we need not reach the question of whether Brin's counsel made a reasonable investigation before filing the complaint. Accordingly, the trial court did not abuse its discretion by denying Stutzman's motion for CR 11 sanctions against Brin.

### D. Attorney Fees

Brin requests attorney fees under RAP 18.9(a) for

defending an appeal that she deems frivolous. An appeal is frivolous when, considering the record in its entirety and resolving all doubts in favor of the appellant, no debatable issues are presented upon which reasonable minds might differ, *i.e.*, "it is so devoid of merit that no reasonable possibility of reversal exists." *Goad v. Hambridge*, 85 Wn. App. 98, 105, 931 P.2d 200, *review denied*, 132 Wn.2d 1010 (1997). An appeal is not frivolous merely because the reviewing court rejects the appellant's arguments. *Streater v. White*, 26 Wn. App. 430, 613 P.2d 187, *review denied*, 94 Wn.2d 1014 (1980).

Although we reject Stutzman's appeal of the replevin judgment, the appeal is not frivolous under the standard enunciated in *Goad*. Accordingly, we reject Brin's request for attorney fees under RAP 18.9(a).

## II. SECURITIES ACTION

Brin appeals the securities judgment, contending that the trial court erred by not holding Stutzman civilly liable under RCW 21.20.430(1) for violating RCW 21.20.010. Stutzman cross-appeals, contending that the trial court erred by holding him civilly liable for violating RCW 21.20.020 and refusing to impose CR 11 sanctions against Brin for maintaining a cause of action without factual or legal basis. Stutzman requests attorney fees for defending an appeal he deems frivolous.

### A. RCW 21.20.010 and RCW 21.20.430(1)

The trial court dismissed Brin's cause of action under RCW 21.20.430(1) for Stutzman's alleged violation of RCW 21.20.010, because Stutzman "did not 'offer to sell a security' " to Brin. Clerk's Papers at 528-29. Brin contends that the trial court erred because the Washington Supreme Court rejected a strict privity requirement under RCW 21.20.430(1) in *Haberman v. WPPSS*, 109 Wn.2d 107, 131-32, 744 P.2d 1032, 750 P.2d 254 (1987). Stutzman contends that Brin cannot raise this issue on appeal because she

failed to raise it at trial, and, even if she could, the trial court correctly ruled that RCW 21.20.010 does not govern his conduct in this case.

Generally, the reviewing court will not consider theories not presented to the trial court. *Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 780, 819 P.2d 370 (1991). "The reason for this rule is to afford the trial court an opportunity to correct any error, thereby avoiding unnecessary appeals and retrials." *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983). The reviewing court may, however, consider issues affecting the appellant's right to maintain the action or the reviewing court's ability to render a proper decision. *Bennett v. Hardy*, 113 Wn.2d 912, 918-19, 784 P.2d 1258 (1990).

Under the circumstances of this case, we will consider Brin's contention that the trial court erred by dismissing her cause of action under RCW 21.20.430(1). First, although Brin did not specifically cite *Haberman* in her trial brief, she specifically sought relief under RCW 21.20.430(1) in her complaint. Second, the issue affects Brin's right to maintain her action under RCW 21.20.430(1). Third, we must review this issue to render a proper decision on Stutzman's contention that the trial court abused its discretion by not sanctioning Brin for asserting a legally baseless claim under RCW 21.20.430(1). *See* RAP 2.5(a).

In *Haberman*, the Supreme Court held that "a defendant is liable as a seller under RCW 21.20.430(1) if his acts were a substantial contributive factor in the sales transaction." *Haberman*, 109 Wn.2d at 131-32. The court noted that its "substantial contributing factor analysis simply expands the strict privity approach to sellers so as to include those parties who have attributes of a seller and thus who policy dictates should be subject to liability under RCW 21.20.430(1), but who would escape primary liability for want of privity." *Haberman*, 109 Wn.2d at 132. Therefore, the substantial contributing factor test applies only to persons "who have the attributes of a seller." *Id.*; *Hines v. Data Line Sys., Inc.*, 114 Wn.2d 127, 149-50, 787 P.2d 8

(1990); *see also* Barbara L. Schmidt, Note, *Expanding Seller Liability Under the Securities Act of Washington*, 63 WASH. L. REV. 769, 783 (1988) (noting that courts applying the substantial contributing factor test find liability almost exclusively where actual title passes from the "seller" or where the "seller" is directly involved in the sale process).

Brin made her investment decisions based on Stutzman's advice that he was purchasing the same options for his own account, as indeed he was. In *Haberman*, the Washington Public Power Supply System (the Supply System) sold an offering to underwriters who in turn resold the bonds to investors. The plaintiffs, who purchased the bonds, sued the Supply System, its 23 members and others, including various attorneys and accountants who had acted together with the issuer of the bonds in order to facilitate the sales, and who thus had the attributes of a seller although they were not in direct privity with the bond purchasers. *Haberman*, 109 Wn.2d at 118, 132. Stutzman, however, did not act together with the issuers of the options; he had no attributes of a seller of the options. Instead, he too was a purchaser of the same options that he advised Brin to buy. Although Stutzman acts were a "but for" cause of Brin's injuries in that she would not have purchased the options but for Stutzman's advice, "but for" causation alone does not satisfy proximate causation. *Haberman*, 109 Wn.2d at 131. Notwithstanding the substantial contributing factor test, liability under RCW 21.20.430(1) "remains based on a defendant's status as seller." *Haberman*, 109 Wn.2d at 132-33. Neither did Stutzman take any part in the actual sales process by acting as the "catalyst" between the option dealers and Brin. *Hines*, 114 Wn.2d at 149-50. Therefore, Stutzman was not the seller under *Haberman* and the trial court correctly concluded that RCW 21.20.430(1) does not govern Stutzman's conduct in this case. Accordingly, we do not reach the issue of calculating damages under RCW 21.20.430(1).

## B. RCW 21.20.020

Although the trial court concluded that Brin did not have

a cause of action under RCW 21.20.430(1), the court found that Stutzman acted as an investment adviser and gave unsuitable investment advice to Brin based on her financial situation. The trial court awarded Brin restitution of the fees she paid to Stutzman under an implied private cause of action theory.

Stutzman appeals, contending that the trial court erred by holding him civilly liable for violating RCW 21.20.020 because he is not an "investment adviser" under RCW 21.20.005(6). Specifically, he contends that the record does not support the finding that he gave investment advice for a fee and that the trial court failed to make a finding that he was "engaged in the business" of giving investment advice. Brin contends that RCW 21.20.020 governs "any person who receives any consideration from another party primarily for advising the other person as to the value of securities or their purchase or sale[.]" RCW 21.20.020. Alternatively, Brin contends in her brief that the trial court correctly found that Stutzman was an "investment adviser" under the Securities Act.

Questions of statutory construction are reviewed de novo under the error of law standard. *Waste Management of Seattle, Inc. v. Utilities & Transp. Comm'n*, 123 Wn.2d 621, 627, 869 P.2d 1034 (1994). "The purpose of statutory construction is to effectuate legislative intent." *Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 312, 884 P.2d 920 (1994). "Where the meaning of the statute is clear, we must accept the plain and unambiguous language." *Biggs*, 119 Wn.2d at 134. "However, if the meaning of the statute and the intent of the Legislature are not clear from the words of the statute, we may resort to extrinsic aids . . . to determine legislative intent." *Id.*

In RCW 21.20.030, the Legislature used the statutorily defined term "investment adviser" to indicate the scope of the subsection's coverage. In RCW 21.20.020, the Legislature described its coverage as "any person who receives any consideration from another party primarily

for advising the other person as to the value of securities or their purchase or sale[.]" "It is an elementary rule that where certain language is used in one instance, and different language in another, there is a difference in legislative intent." *Seeber v. Washington State Pub. Disclosure Comm'n*, 96 Wn.2d 135, 139, 634 P.2d 303 (1981). Therefore, we must determine the Legislators' intent by distinguishing between RCW 21.20.020 and RCW 21.20.030.

We construe the Securities Act to "achieve harmony between it, federal law, and the securities laws of those other states that have also modeled their law after the Uniform Securities Act." *Cellular Eng'g, Ltd. v. O'Neill*, 118 Wn.2d 16, 24, 820 P.2d 941 (1991). The Legislature modeled RCW 21.20.020 after section 102 of the Uniform Securities Act. *Haberman*, 109 Wn.2d at 125. RCW 21.20.005(6), the subsection defining "investment adviser," closely parallels section 401(f) of the Uniform Securities Act.

The comments to the Uniform Securities Act explain, "The definition of 'investment adviser' in section 401(f) contains a number of exceptions which look to the registration requirement in Part II. But, as in section 101, there are no exemptions from fraud." Uniform Securities Act § 102, 7B U.L.A. at 526 cmt. a. (1985). Thus, as Joseph C. Long states:

> The analysis of the registration requirement for investment advisers requires a two step analysis. First, it must be determined who is an investment adviser, then, Section 201(c) must be examined because it provides several exceptions from the registration requirements. The difference between the exclusions from the definition of investment adviser and the exemptions from the registration requirement lies in the fact that those excluded from the definition are not subject to the special antifraud and other provisions of Section 102. Those who are merely excused from the registration requirement will be subject to the provisions of Section 102.

JOSEPH C. LONG, BLUE SKY LAW, "BROKER-DEALERS, AGENTS, AND INVESTMENT ADVISERS," § 6.04 (1993) (footnotes omitted).

Similarly, the Michigan Court of Appeals observed in *People v. Cook*, 89 Mich. App. 72, 279 N.W.2d 579, 587 n.6 (1979):

> Subsection 401(f) of the [Uniform Securities Act] defines "investment advisor". The term "investment advisor" does not appear in subsection 102(a). Nevertheless, the official comment to subsection 401(f) is persuasive authority for interpreting the "consideration principally for investment advice" language of subsection 102(a). The general description of an investment advisor in subsection 401(f) is substantially the same as the description of persons to be reached by subsection 102(a). The term "investment advisor" does not appear in subsection 102(a) because its formal definition also includes several express exceptions, which the drafters did not wish to incorporate into the antifraud provision. See Uniform Securities Act, § 1102(a), Official Comment, reprinted in Loss & Cowett, Blue Sky Law, p. 252.

In keeping with the statutory requirement that the Washington act be construed so as to effectuate its general purpose of making uniform the federal securities law and the law of those states which enact the Uniform Securities Act, *see* RCW 21.20.900, we conclude that the Legislature intended RCW 21.20.020 to govern persons satisfying the statutory definition of "investment adviser" in RCW 21.20.005(6). Accordingly, we must determine whether Stutzman falls under the RCW 21.20.005(6) definition of "investment adviser." If he does not, the antifraud provisions of RCW 21.20.020 are not applicable to his conduct giving rise to the lawsuit.

RCW 21.20.005(6) generally defines "investment adviser" as "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, . . . as to the advisability of investing in, purchasing, or selling securities[.]" Although Stutzman's status as an "investment adviser" is a question of law, *Securities & Exch. Comm'n v. Wall St. Transcript Corp.*, 454 F. Supp. 559, 561 (S.D.N.Y. 1978), whether Stutzman was engaged in the business of advising others regarding securities involves questions of fact.

Because the trial court did not find that Stutzman was engaged in the business of advising others regarding securities, we must presume a negative finding against Brin unless "ample evidence to support the missing finding, and the findings entered by the court, viewed as a whole, demonstrate that the absence of the specific finding was not intentional." *Douglas N.W., Inc. v. Bill O'Brien & Sons Constr., Inc.*, 64 Wn. App. 661, 682, 828 P.2d 565 (1992).

Interpreting the corresponding provision of the Investment Advisers Act of 1940, 15 U.S.C.A. § 80b-2(a)(11), the staff of the Securities and Exchange Commission (SEC) advised that the definition of an investment adviser suggests a formal business relationship between an adviser and a client:

> Whether a person giving advice about securities for compensation would be "in the business" of doing so, depends upon all relevant fact and circumstances. The staff considers a person to be "in the business" of providing advice if the person: (i) Holds himself out as an investment adviser or as one who provides investment advice, (ii) receives any separate or additional compensation that represents a clearly definable charge for providing advice about securities, regardless of whether the compensation is separate from or included within any overall compensation, or receives transaction-based compensation if the client implements in the investment advice, or (iii) on anything other than rare, isolated and nonperiodic instances, provides specific investment advice.

Applicability of the Investment Advisers Act, 52 Fed. Reg. 38,400, 38,402 (1987). "This compensation element is satisfied by the receipt of any economic benefit, whether in the form of an advisory fee or some other fee relating to the total services rendered, commissions, or some combination of the foregoing." *Id.* at 38,403. But it is clear from case law construing federal securities law that the receipt of compensation in exchange for advice regarding the purchase or sale of securities, standing alone, is not synonymous with "engag[ing] in the business" of rendering investment advice "for compensation", notwithstanding the opinion of the staff of the SEC above quoted.

In *Zinn v. Parrish*, 644 F.2d 360 (7th Cir. 1981), the appellant Zinn had been engaged in the business of managing professional athletes for more than 20 years. One of his clients was Lemar Parrish of the Cincinnati Bengals. In accord with their contract, Zinn provided Parrish with investment advice, including forwarding to Parrish the stock purchase recommendations of certain other individuals after Zinn first screened the recommendations. When Parrish decided to sever his relationship with Zinn, he refused to pay certain compensation then owing under the contract, claiming that the contract was void for Zinn's failure to register as an investment adviser under the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-1 to 80c-3. Zinn sued to recover the compensation. He lost at the district court level but prevailed on appeal. The Seventh Circuit stated:

> It is true that Zinn might have been compelled to register as an investment adviser, even if he limited his activities to screening the securities recommendations of others before passing them along to clients, if he made a business of such activities. But isolated transactions with a client as an incident to the main purpose of his management contract to negotiate football contracts do not constitute engaging in the business of advising others on investment securities. From the evidence, Parrish was the only one of [Zinn's] personal management clients to whom he transmitted securities recommendations from others.

> Zinn was not a dealer or trader in securities and there was no evidence to indicate that he was financially interested in the securities recommendations he passed along. Therefore the conflict of interest at which the Act was aimed was not present here. In substance, his position was similar to that of a professional trustee whose advice to his clients on securities is solely incidental to his duty as a professional trustee. In the [case of In re Augustus P. Loring, Jr., 11 SEC 885, 886-87, 41-45 Dec. ¶ 75,299 (1942)] the SEC . . . concluded that the trustee was not an investment adviser because he did not "hold himself

out as being engaged in the business of giving advice to others as to securities." We note that here as well, the district court found as a fact that Zinn "did not provide substantial investment advice" —a finding in derogation of its final conclusion. Neither the execution of the contract by Zinn nor his conduct thereunder made him an investment adviser. Accordingly, we need not reach the question whether Zinn's conduct fell within the "de minimus" exception to the registration requirements of the 1940 Act.

*Zinn*, 644 F.2d at 364 (some citations, some internal quotation marks and one footnote omitted).[3]

■■■ Although substantial evidence in the record supports the trial court's finding that Brin paid a fee, per their profit-sharing agreement, to Stutzman for his investment advice, we do not find ample evidence in the record to support a finding that Stutzman "engage[d] in the business" of providing investment advice to others. First, Stutzman did not hold himself out as being in the business of giving investment advice.[4] Second, although he accepted gifts from the two other women for whom he provided investment advice, he did not charge them any fees. Third, although Stutzman advised Brin to make the same investments that he was making, there is no evidence in the record that Stutzman was otherwise financially interested in the securities the parties were purchasing.

We do not believe that the Securities Act is aimed at

---

[3]The de minimus exception to the 1940 Act provides that the registration requirements of the act do not apply to any investment adviser who during the course of the preceding 12 months had fewer than 15 clients and who neither holds himself out generally to the public as an investment adviser nor acts as an investment adviser to any investment company registered under the Investment Company Act of 1940. Our Washington statute contains a similar de minimus exception to the definition of investment adviser. *See* RCW 21.20.005(6) (investment adviser does not include a person who has no place of business in this state if that person does not direct business communications into this state in any manner to more than five clients other than certain listed financial institutions or institutional buyers).

[4]Among the factors the SEC looks to in determining whether someone holds himself out as an investment adviser are listings as an investment adviser in telephone or business directories, expressions of willingness to existing clients or others to accept new clients, or the use of business letterhead indicating activity as an investment adviser. *Zinn*, 644 F.2d at 363 (citations omitted).

persons who do not engage in the business of providing investment advice for compensation but who nevertheless may share their real or supposed investment expertise with a friend or even among a small group of friends (or, as here, among a small group of lovers). Brin's counsel clearly understood the distinction between a formal investment adviser-client relationship and the facts of this case. At oral argument, he conceded, "What I think we have here is not an investment adviser but, in the facts of this case based upon the findings of fact, in essence, a co-venture by someone who is getting fifty percent of the profits, none of the losses, contradistinct to an investment adviser." While this may not rise to the level of a concession of trial court error, it supports the validity of our conclusion that no substantial evidence in the record supports the "missing" finding that Stutzman was engaged in the business of providing investment advice. Indeed, Brin's counsel could point to no such evidence when asked to do so during the course of oral argument.[5]

The purpose of the Securities Act is "to protect investors from speculative or fraudulent schemes of promoters." *Cellular*, 118 Wn.2d at 23. To that end, a defendant should not be held immune from a statute because he defrauds his first or only client. However, even assuming that Stutzman engaged in conduct proscribed by the antifraud provisions of the Securities Act, the issue is whether Brin was Stutz-

---

[5]We do not imply that under other facts our ruling might not be different. For example, in *State v. Slemmer*, 48 Wn. App. 48, 738 P.2d 281 (1987), this court upheld the criminal conviction of the defendant for one count of first degree theft and two counts of securities fraud. There, the defendant set up a partnership with a couple he met at church and he attracted a small group of people into an investment club by giving lectures about stock options. In each instance, he had control of the funds which he invested in options; he also concealed the investment losses, misrepresented the investment profits and embezzled funds which had been placed under his control for purposes of investment into options. The trial court admitted testimony from two licensed securities traders who testified that options trading is risky, that the risk should be disclosed to potential investors and that no more than 15 percent of a person's assets should be invested in options because of the risk of loss. The admissibility of this evidence was challenged on appeal. The appellate court held that the testimony was relevant to show that the defendant's representations were misleading under RCW 21.20.010, the antifraud provisions that the defendant was charged with violating. *Slemmer*, 48 Wn. App. at 54.

man's "client" or just a friend relying upon another friend for investment advice, albeit ill-advised and unsuitable investment advice in view of Brin's financial circumstances.[6] Here, the record suggests that Brin and Stutzman had a personal relationship, during which Stutzman shared his investment knowledge with Brin for a share of her profits, rather than the kind of fiduciary relationship that is subject to regulation under the Uniform Securities Act.

The regulation of investment advisers under the Securities Act is extensive, and thus expensive to administer. Investment advisers as defined by the act must register and be relicensed annually. WAC 460-24A-055. They must file annual financial statements showing their personal assets, liability and net worth. WAC 460-24A-060. They must meet minimum requirements for capital assets and ratio of net capital to aggregate indebtedness. WAC 460-24A-170. They must keep extensive records including but not limited to journals of all cash receipts and disbursements, general ledgers reflecting asset, liability, reserve, capital, income and expense accounts, records of all purchases or sales and cancellations for all transactions for clients, copies of all their advertisements and fee contracts (which must be in writing) and billing statements to clients, and all their written communications with clients. WAC 460-24A-200. They must pass two examinations. WAC 460-24A-050. The nature of their permissible fee agreements is regulated, WAC 460-24A-160, as is the content of their permissible advertising, WAC 460-24A-100. This list of regulatory requirements is not exhaustive but is merely illustrative of the degree of regulation required in order to enforce the Securities Act. It would be beyond reason to conclude that

---

[6]Substantial evidence in the record supports the trial court's finding that Stutzman gave Brin "unsuitable investment advice" in light of her financial circumstances. WAC 460-24A-220 provides that "dishonest or unethical practices" as used in RCW 21.20.110(7) as applied to investment advisors includes recommending to a client the purchase, sale or exchange of any security without reasonable grounds to believe that the recommendation is suitable for the client on the basis of information furnished by the client after reasonable inquiry concerning the client's investment objectives, financial situation and needs and on any other information known by the investment advisor.

the Legislature, in adopting the act, intended it to apply to the personal relationship between Brin and Stutzman as reflected by the record on appeal.

Because the evidence in the record does not support a finding that Stutzman was engaged in the business of advising others regarding securities, Stutzman was not an investment adviser under RCW 21.20.005(6). Therefore, the antifraud provisions of RCW 21.20.020 do not apply to his relationship with Brin and his conduct during that relationship regarding the investment advice he gave and the compensation he received. Accordingly, the trial court erred by holding Stutzman liable for restitution damages under RCW 21.20.020 and the judgment in favor of Brin must be reversed. In light of this ruling, we do not decide the issue of whether the Securities Act implies a private cause of action for violations of RCW 21.20.020, although we will touch on a ramification of that issue in the next section of this opinion.

## C. Rule 11 Sanctions

Stutzman appeals the trial court's refusal to impose CR 11 sanctions against Brin. He contends that Brin had no factual basis to initially allege that he provided other similarly situated women with investment advice for a fee or to maintain that allegation after taking the deposition of Ruth Rupert. Stutzman also contends that Brin had no legal basis for her claim under RCW 21.20.430(1) and failed to demonstrate that her attorney conducted a reasonable investigation before bringing her securities action.

Before filing the securities action, Brin met with Rupert and Bay. Rupert told Brin that she set up an account at Charles Schwab to act on investment advice provided by Stutzman. Bay told Brin that Stutzman had given her investment advice. Rupert and Bay "each provided meals, lodging, clothing, vacations and cash to [Stutzman]." Clerk's Papers at 541. Therefore, based on the CR 11 objective standard of "reasonable under the cir-

cumstances," Brin had sufficient factual bases to initially allege that Stutzman provided other similarly situated women with investment advice for a fee.

Stutzman next contends that Brin should have dismissed the allegation after Rupert testified in her deposition that she did not pay Stutzman a fee for investment advice. CR 11 sanctions are appropriate where, after discovery reveals a claim is baseless, an attorney continues to prosecute the case by the "filing of pleadings, motions and legal memoranda." *MacDonald v. Korum Ford*, 80 Wn. App. 877, 892, 912 P.2d 1052 (1996). CR 11 "does not impose an affirmative duty to dismiss an action once it has become unreasonable to pursue its prosecution." *Id.*

Brin filed her securities action in September 1994, alleging that Stutzman charged other similarly situated women a fee for securities advice. In February 1995, Rupert testified that she did not pay Stutzman a fee for investment advice. Stutzman points to no documents in which Brin continued to prosecute her initial allegation that Rupert paid Stutzman a fee for investment advice. Moreover, the trial court found that although the other women "did not, per se, pay a fee to [Stutzman] for investment advice," the women did provide Stutzman with "meals, lodging, clothing, vacations and cash." Clerk's Papers at 527. This finding is supported by substantial evidence in the record. We conclude that Brin did not violate CR 11 by failing to dismiss her allegation that Stutzman charged other women a fee for securities advice.

Stutzman also contends that Brin had no legal basis to seek damages against him under the Securities Act for his alleged violations of RCW 21.20.010 and RCW 21.20.020. A filing lacks legal basis if it is not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. CR 11; *Bryant*, 119 Wn.2d at 219-20.

First, a plaintiff may file a cause of action under RCW 21.20.430(1) for an alleged violation of RCW 21.20.010 even if there is no privity between the plaintiff and defendant.

*Haberman*, 109 Wn.2d at 131-32. Second, the United States Supreme Court has implied a private cause of action against investment advisers who violate the federal securities law. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S. Ct. 242, 62 L. Ed. 2d 146 (1979). Therefore, Brin had a reasonable legal basis to seek damages against Stutzman for his alleged violations of RCW 21.20.010 and RCW 21.20.020.

Because Brin's complaint was well-grounded in factual and legal bases, we do not reach the question of whether Brin's counsel made a reasonable inquiry into the facts and law. We conclude that the trial court did not abuse its discretion by denying Stutzman's motion for CR 11 sanctions against Brin.

## D. Attorney Fees

Stutzman requests attorney fees under RAP 18.9 for defending an appeal he deems frivolous. Stutzman contends that Brin's appeal lacks factual and legal bases to support her claim for damages under the Securities Act. As discussed above, Brin presented debatable issues and made a good faith argument for the application of the Securities Act to the facts of her case. *Goad v. Hambridge*, 85 Wn. App. 98, 105, 931 P.2d 200, *review denied*, 132 Wn.2d 1010 (1997) Therefore, Brin's appeal is not frivolous under the standard enunciated in *Goad*. Accordingly, we reject Stutzman's request for attorney fees on appeal.

In sum, the judgment in the replevin action is affirmed. The judgment in the securities action is reversed. All requests for attorney fees on appeal are rejected.

BAKER, C.J., and COLEMAN, J., concur.

Review denied at 136 Wn.2d 1004 (1998).